Millicent BAILEY, Plaintiff–Appellant,

v.

SOUTHWEST GAS COMPANY,
Defendant–Appellee.

No. 00–15796.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 19, 2001

Filed Jan. 17, 2002

Richard Segerblom, Las Vegas, Nevada, for the plaintiff-appellant.

John Egbert, Jennings, Strouss & Salmon, P.L.C., Phoenix, Arizona, for the defendant-appellee.

Before: BEEZER, TROTT, and TALLMAN, Circuit Judges.

TALLMAN, Circuit Judge:

In this case we consider an employer's and an employee's duties and obligations under the Family Medical Leave Act ("FMLA"), codified at 29 U.S.C. §§ 2601–2654. Millicent Bailey appeals the district court's grant of summary judgment on her claims for interference with her rights under the FMLA, and for retaliatory discharge under Nevada law. Bailey contends that her employer, Southwest Gas Company ("Southwest"), terminated her in violation of the FMLA, and that her discharge constitutes unlawful retaliation under state law. We have jurisdiction under 28 U.S.C. § 1291. We disagree and affirm.

**I**

Southwest hired Bailey in 1992 as a Customer Service Representative. Bailey had indicated on her job application that she would be available to work full time, weekends, holidays, and overtime. Bailey was assigned the day shift (8:00 a.m. to 5:00 p.m.), but was required to work the evening shift (2:30 p.m. to 11:00 p.m.) for one week every three months. Like all Customer Service Representatives, Bailey

was also expected to work overtime beyond the end of her shift if service orders remained to be completed. Bailey's duties included driving to customer residences to respond to complaints, turning natural gas on and off, making minor repairs, and providing other on–location services. Bailey's job required her to work extensive overtime during busy periods such as late fall and early winter.

Bailey worked the night shift on October 26, 1995. At 1:15 a.m. the following morning, after working several hours of overtime, Bailey informed the Southwest dispatcher that she had parked in a convenience store parking lot to take a nap because she could not stay awake. When the dispatcher contacted Bailey at 3:00 a.m., Bailey indicated she intended to report her remaining work orders as "Can't Get In" and then go home.

The next day, October 27, 1995, Bailey again worked the night shift. At 11:56 p.m. she informed the dispatcher that she was at a trailer park address but could not locate the customer's space number. A short time later, Bailey notified the dispatcher that she also could not locate the address of another work order. Bailey closed out both of these work orders by coding them as "Can't Get In." Subsequently, the customers at the two addresses Bailey claimed she was unable to locate called the Southwest dispatcher to complain about their lack of service. The dispatcher sent another Customer Service Representative who found both addresses without difficulty and who completed the work orders.

When Ken Swanson, Bailey's supervisor, later questioned her about these incidents, Bailey responded that she could not safely work the overtime assigned to her. Because Bailey's response suggested that her job performance may have been compromised by a medical condition, Swanson requested that she obtain a letter from her doctor describing her condition and indicating why she could not work overtime. Bailey responded by letter, dated October 31, 1995, in which she stated "[t]his morning I will show you three vials from this very doctor, all marked 'may cause drowsiness.' Although one would reasonably think that this should suffice, I still will bring you a letter from my doctor telling what you asked for and more."

On November 27, 1995, Bailey provided a letter from her gastroenterologist, Dr. Charles Cohan. The letter, dated November 8, 1995, stated in relevant part:

> It has come to my attention that Bailey Millicent [sic], a patient that I have been following over the past six months, has been required to work overtime on repeated occasions over the past several months. Based on her current medical problem I have placed her on medication whose side effect is sedation as well. She should only be working roughly an eight-hour shift each day.
>
> .    .    .    .    .
>
> My plans are to continue her on this medication which also causes sedation in order to help control her current medical condition.

Dr. Cohan's letter did not specify Bailey's medical problem, it did not indicate which prescription drug(s) she was taking, and it did not describe the effects of the drug(s) except to indicate that the medication caused drowsiness.

Southwest's Rules of General Conduct, which were provided to Bailey when she was hired, required that employees provide notice to their supervisor before their work shift if they are taking prescription drugs which might affect their ability to safely perform their normal job duties. The Rules provided that "[s]upervisor notification is the employee's responsibility;

failure to do so may result in disciplinary action, up to and including termination."

Similarly, Southwest's Standard Practice Manual required Bailey to (1) "notify [her] supervisor before beginning [her] normal work shift" if she was taking "prescription medication(s) which may affect [her] ability to perform normal job duties safely"; and (2) "provide [her] supervisor with a note from the prescribing doctor stating that the medication will not adversely affect the ability to safely perform the functions of the job." This provision also warned that "[f]ailure to notify the supervisor and to provide the required information from the doctor may result in discharge or discipline."

In response to Dr. Cohan's letter, Bailey was called into a meeting with Swanson and his supervisor, Paul Bitryk, on December 1, 1995. During the meeting Bailey was given a 3–page letter addressed to her, signed by Bitryk, which advised Bailey of her rights and responsibilities under the FMLA. The letter requested that Bailey have her physician complete the FMLA Form 180.4 "Certification of Health Care Provider" in response to the safety issues raised in Dr. Cohan's letter. The letter directed Bailey to submit a completed Form 180.4 within fifteen calendar days, and advised Bailey that if her medical condition required that she take time off she would need to complete additional FMLA forms.

Bailey responded by explaining that she was not sick or disabled, and that her problem with working overtime was prompted by excessive overtime rather than a medical condition or sleep-inducing medication. Bailey expressed concern that the amount of overtime she was working was unsafe, and stated that in order for Dr. Cohan to provide additional information on her fitness for duty Southwest would first have to provide him a written copy of its overtime policy.

Bailey did not provide the completed physician certification form within the time requested. On December 18, 1995, another meeting was held in which she was warned that her failure to submit the form by December 22, 1995, could result in her termination for insubordination. Instead of responding directly to her employer's request for more particularity regarding the basis of her medical condition, Bailey reiterated her request for more information on Southwest's overtime policy. Southwest's Manager of Human Resources then offered to talk to Bailey's doctor regarding the reasons the company needed the medical information. Bailey declined this offer and indicated that she had instructed Dr. Cohan not to talk to anyone at Southwest about her condition.

On December 21, 1995, Bailey presented the FMLA form to Dr. Cohan. Dr. Cohan completed the form in part, certifying that Bailey was qualified for "full duty," without specifying whether "full duty" included overtime. Dr. Cohan crossed out most of the rest of the form and wrote across the remaining unanswered sections "More information is required" and "This form does not address the overtime policy and the patient[']s fatigue which is secondary to overtime." Dr. Cohan's response provided no explanation of Bailey's "medical problem," nor did it identify what medication she was taking, or the medication's potential impact on her ability to perform her job.

In response to the incomplete certification, Southwest demanded that Bailey obtain from Dr. Cohan the information necessary to evaluate her fitness for duty. Bailey refused to comply and further refused to authorize Dr. Cohan to provide the medical information directly to South-

west. Shortly thereafter, Southwest fired Bailey for her insubordination.[1]

Bailey filed this lawsuit in Nevada state court on December 18, 1997, and Southwest removed the case to federal district court. On March 27, 2000, the district court granted Southwest's motion for summary judgment. The district court rejected Bailey's FMLA claim because she testified at her deposition that she did not have a serious health condition, she never requested family medical leave, and would not have taken family medical leave had it been offered. Her retaliatory discharge claim was rejected on the grounds that she failed to provide any evidence that Southwest violated public policy by terminating her. This timely appeal followed.

## II

We review a grant of summary judgment de novo and apply the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1021 (9th Cir.2001). We must determine whether, when viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court erred in applying the relevant substantive law. *Id.*

### A

"The FMLA provides job security to employees who must be absent from work because of their own illnesses, to care for family members who are ill, or to care for new babies. 29 U.S.C. § 2612 (2001)." *Bachelder v. Am. West Airlines*, 259 F.3d 1112, 1119 (9th Cir.2001). Under the FMLA, employees are entitled to take up to twelve weeks of leave each year and are guaranteed reinstatement after exercising their leave rights. *Id.* It is unlawful for an employer to interfere with, restrain, or deny an employee's exercise of FMLA rights, and an employer may not discharge an employee because the employee has opposed practices made unlawful under the FMLA. 29 U.S.C. § 2615(a)(1)-(2) (2001).

While employees must notify their employers in advance if they plan to take foreseeable leave for reasons covered by the Act, they need not expressly assert their FMLA rights or even mention the FMLA. *Bachelder*, 259 F.3d at 1130. Rather, the employer bears the responsibility of determining whether an employee's leave request is covered by the Act and must notify the employee accordingly. 29 C.F.R. § 825.208(a) (2001). If the employer lacks sufficient information to determine whether an employee's leave (including leave taken in the form of a reduced schedule) qualifies under the FMLA, the employer should inquire further in order to ascertain whether the FMLA applies. *Id.*

In response to an employer's inquiries, an employee must explain the reasons justifying the requested leave so as to allow the employer to determine whether the FMLA is implicated. *Id.* at § 825.208(a)(1). The employer may deny leave where an employee fails to explain the reason for the leave, or does not state a qualifying reason. *Id.* at § 825.208(a)(1), (2).

The employer may also require that the employee obtain, in a timely manner, a written certification by a health care provider regarding the medical condition ne-

---

1. On January 25, 1996, Bailey filed a complaint with the Nevada Division of Occupational Safety. After conducting an investigation, the Division of Occupational Safety issued a written report which is not a part of the record on appeal. The district court granted the employer's unopposed motion to strike it from the record.

cessitating leave. 29 U.S.C. § 2613(a) (2001). A certification will be considered sufficient if it details several aspects of the health condition including, in relevant part, a statement of the medical necessity for the leave, the expected duration of leave, and a statement that the employee is unable to perform the functions of the employee's job. *Id.* at § 2613(b). If an employer has reason to doubt the validity of a medical certification, the employee may be required to obtain a second medical opinion at the employer's expense. *Id.* at § 2613(c).

■ Bailey has failed to present a genuine issue of material fact regarding her claim of interference with her rights under the FMLA. First, she candidly admitted that the FMLA does not apply to her case. Bailey concedes that she did not have a qualifying health condition, that she never requested FMLA leave, and that she would not have taken FMLA leave had it been offered. Because Bailey never sought to invoke her FMLA rights, she may not now argue that Southwest interfered with the exercise of her rights by suggesting the FMLA might apply, providing her with information on it, and seeking a medical certification of her condition.[2]

■ Second, there is no evidence that any of Southwest's actions interfered with her rights under the FMLA. On the contrary, Southwest had both the right and the responsibility to inquire further after Bailey and her physician indicated that she was taking soporific medication which interfered with her ability to work overtime. Bailey worked with natural gas, and her job required her to drive long distances late at night. Once Bailey indicated that she could not perform her job functions

safely due to her use of medication, Southwest had the obligation to explore Bailey's status under the FMLA, and the right, under company policies to which she had agreed when she started her employment, to obtain more information as to whether she remained fit for duty.

■ While Southwest complied with its duties and responsibilities under the FMLA, Bailey failed to shoulder her burden. The form, as partially completed by Bailey's doctor, was not a complete certification as required under the FMLA. *See* 29 U.S.C. § 2613(b); 29 C.F.R. § 825.307(a). Dr. Cohan did not address the questions posed on the form, and instead simply crossed out most of the sections. His "full duty" designation left unclear whether he meant "full duty" with overtime or "full duty" without overtime. His response also did not address how the medication might affect Bailey's ability to perform her job safely. In *Marchisheck v. San Mateo County*, we rejected a physician's certification as insufficient under the FMLA where, as here, "it did not even establish or claim that [the employee] had a serious medical condition." 199 F.3d 1068, 1077 (9th Cir.1999).

It was not unlawful for Southwest to require that Bailey explain her use of soporific medicine while at work, and her refusal to provide additional information was not a protected activity. Southwest could, therefore, consider Bailey's failure to cooperate in making its decision to terminate her for insubordination.

**B**

■ Bailey's retaliatory discharge claim is governed by Nevada law. We review de novo the district court's determination of

---

**2.** Bailey did not need to expressly mention the FMLA in order to invoke her FMLA rights. In her deposition, however, she denied that she sought FMLA leave, expressly or otherwise.

state law. *Ellis v. City of San Diego*, 176 F.3d 1183, 1188 (9th Cir.1999).

■ Under Nevada law, "[t]he only exception to the general rule that at-will employees can be dismissed without cause is the so-called public policy exception ..." *Bigelow v. Bullard*, 111 Nev. 1178, 901 P.2d 630, 631 (995). This exception is a narrow one. *Id.* at 632. "To prevail, the employee must be able to establish that the dismissal was based upon the employee's refusing to engage in conduct that was violative of public policy or upon the employee's engaging in conduct which public policy favors ..." *Id.* Such actions "are severely limited to those rare and exceptional cases where the employer's conduct violates strong and compelling public policy." *Wayment v. Holmes*, 112 Nev. 232, 912 P.2d 816, 818 (Nev.1996).

■ "[R]ecovery for retaliatory discharge under state law may not be had upon a 'mixed motives' theory; thus a plaintiff must demonstrate that his protected conduct was *the* proximate cause of his discharge." *Allum v. Valley Bank of Nevada*, 114 Nev. 1313, 970 P.2d 1062, 1066 (1998) (emphasis in original). Bailey has the burden of proving, by a preponderance of the evidence, a direct causal connection between her actions and her termination. *Id.*

■ Bailey refused to work overtime when she was too tired, and she asserts that Southwest's overtime requirements endangered the public by causing exhausted employees to drive late at night and to work with natural gas connections. However, Bailey presents no objective evidence as to the unreasonable extent of overtime expected of Southwest employees. At best, Bailey's evidence of sleeping on the job shows that it was unsafe for *her* to be working overtime.

In fact, the record indicates that Bailey's own actions arguably violated legitimate work rules and Southwest's safety policies. Bailey's fatigue may have been induced by the soporific medication she was taking at the time, and her refusal to provide required medical information concerning her use of this medication limited Southwest's ability to evaluate the danger she might pose to herself and the public. Southwest's decision to fire her for refusing to provide necessary medical information did not violate compelling public policy.

Moreover, Bailey did not establish that her complaints were the proximate cause of her termination. Southwest did not fire her when she first refused to work overtime, or when, as Bailey asserts, she "continually complained" about working overtime. She was not terminated until after she repeatedly refused to cooperate with Southwest's legitimate requests for medical information necessary to evaluate her fitness for duty, and after she had been warned that termination would result if she did not submit a completed physician certification form. Bailey has failed to present triable evidence that her concerns about working overtime were the proximate cause of her termination.

AFFIRMED.