**Arnulfo GRADILLA, Plaintiff–Appellant,**

v.

**RUSKIN MANUFACTURING, business entity unknown, Defendant–Appellee.**

No. 01–56725.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 2002.

Filed Feb. 14, 2003.

Bita N. Haiem, Beverly Hills, CA, for the plaintiff-appellant.

Michelle R. Walker, Los Angeles, CA, for the defendant-appellee.

Before: REINHARDT, LEAVY and TROTT, Circuit Judges.

Opinion by Judge LEAVY; Dissent by Judge REINHARDT

LEAVY, Circuit Judge.

This case involves the right of an employee to take family and medical leave to care for a family member with a serious medical condition. We hold that under the California Family Rights Act ("CFRA"), an employee who leaves work to travel with and care for a family member with a serious health condition is not entitled to leave when the family member decides, in spite of her serious medical condition, to travel away from her home for reasons unrelated to her medical treatment.

## FACTUAL AND PROCEDURAL BACKGROUND [1]

■ Arnulfo Gradilla worked as a sheet metal assembler at Ruskin's Mira Loma plant from August 1995 until his termination on October 27, 1999. He was a union member and was covered by a collective bargaining agreement. Ruskin had a policy that required employees to call in if they were going to miss work. The policy, referred to by Ruskin as the "three day no-call/no show policy," provides that if a worker does not call in or show up for work for three days, he will be dismissed.

Gradilla's wife had a serious heart condition, so serious that her doctor thought that she might require a heart transplant. Mrs. Gradilla took medication for her heart condition. When she experienced a stressful event, her blood pressure rose,

---

1. Because we are reviewing a grant of summary judgment, we state all facts in the light most favorable to the non-moving party and assume that all disputed facts are resolved in his favor. *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1014 (9th Cir.2000).

her heart beat fast, and she felt dizzy and faint. At these times, she could not care for herself. She needed Gradilla to administer the correct dosage of medication to her, as well as to calm her, so that her heart rate would slow down. Only Gradilla knew how to take care of her when she had a traumatic episode. Gradilla's supervisors knew about Mrs. Gradilla's heart problem, even though Gradilla had never previously asked for leave under the family leave statute. The supervisors never asked Gradilla for medical documentation of her condition, and he never provided any.

Gradilla was fired after an unfortunate confluence of events that occurred in October 1999. On Tuesday, October 19, Gradilla complained at work of pain in his right shoulder and asked to see the doctor. His employer reassigned him to light work but did not send him for medical treatment. The next day, Gradilla's shoulder still hurt, so he went to his supervisor's office to obtain written permission to see the doctor.[2] While he was filling out the necessary paperwork, Gradilla received a telephone call from his wife. Mrs. Gradilla informed him that her father had died in an automobile accident, and she wanted him to accompany her to Mexico for the funeral. Mrs. Gradilla needed her husband to care for her during the trip because her father's death and funeral were stressful, emotionally upsetting events that aggravated her heart condition. Mrs. Gradilla told her husband that they needed to leave for Mexico that afternoon.

Gradilla asked for permission to leave work to accompany his wife to the funeral. His supervisor told him that he did not qualify for bereavement leave under the collective bargaining agreement because his father-in-law was not a member of his immediate family. Gradilla then explained that he was not asking for bereavement leave. He told his supervisors that he needed to accompany his wife because of her heart condition, not because he personally wanted to attend the funeral. His supervisors then gave him permission to leave. Neither Gradilla nor his supervisors mentioned the leave as a request under the California Family Rights Act.

After the conversation in the office, Gradilla left work and headed straight for the airport to meet his wife and several other members of her family, who were also going to Mexico for the funeral. Gradilla called his employer from the airport and reported that he was about to leave for Mexico and would be back in two or three days. Later that afternoon, his son telephoned the employer and informed the person with whom he spoke that Gradilla would not be in on Thursday or Friday, but that he would return to work as usual on Monday. While the Gradillas were in Mexico, Mrs. Gradilla experienced problems with her heart condition, and Gradilla cared for her by administering her medication and otherwise helping to keep her calm. Because he was on a ranch with no telephone, and because he thought he would miss only two days of work, Gradilla did not call in again to report his absence.

Unbeknownst to Gradilla, Ruskin had scheduled a mandatory overtime workday on Saturday, October 23.[3] Because of the

---

**2.** This injury ultimately formed the basis of Gradilla's fourth workers' compensation claim. Gradilla had filed three previous workers' compensation claims: the first in March 1997, for a hand drill injury; the second in October 1997, for left shoulder pain; and the third in April 1999, for a foot injury. There is no contention that any of these injuries was either fraudulent or attributable to any negligence on Gradilla's part.

**3.** Gradilla did not know about the mandatory overtime before he left. He asserts that Ruskin did not post notice of the mandatory overtime until after he had left for Mexico. Ruskin claims that it posted the notice on

mandatory overtime workday, Gradilla missed three days of work. When Gradilla returned to work on Monday, October 25, Ruskin's human resources department told him to go home and wait for someone from the company to contact him. Three days later, on October 28, he was fired. The proffered reason for the termination was that Gradilla violated Ruskin's three day no-call/no-show policy.

After he was fired, Gradilla filed a complaint with the Department of Fair Employment and Housing regarding his discharge and subsequently was issued a right-to-sue notice. He also filed a retaliatory discharge claim with the Workers' Compensation Board under Cal. Labor Code § 132a as well as a workers' compensation claim for the shoulder injury.

Next, Gradilla filed this action in state court. Ruskin removed the case to federal court on the basis of diversity jurisdiction. The complaint contained five causes of action: (1) violation of Cal. Govt.Code § 12945.2 (California Family Rights Act);[4] (2) wrongful termination in violation of Cal. Labor Code § 132a (retaliation for filing a workers' compensation claim); (3) breach of employment contract; (4) and (5) negligent and intentional infliction of emotional distress.

Ruskin moved for summary judgment, and the district court granted the motion. The court held that Gradilla was not protected by the California Family Rights Act because he failed to provide proper medical certification of his wife's illness. The court offered two alternative reasons for dismissing the retaliation claim: first, the exclusive forum for a § 132a claim is the Workers' Compensation Appeals Board;

and second, to the extent that the complaint raised the claim that Ruskin retaliated against Gradilla in violation of public policy, Gradilla failed to establish a prima facie case. Finally, the district judge dismissed the breach of contract and tort claims on the grounds that they were preempted by § 301 of the Labor Management Relations Act ("LMRA"). Gradilla appealed.

## DISCUSSION

■■■ We review a grant of summary judgment *de novo*, drawing all inferences in favor of the nonmoving party. *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1014 (9th Cir.2000). We will affirm only if there are no genuine issues of material fact and the district court applied the law correctly. *Id.* The district judge's decision regarding preemption is reviewed *de novo. Id.*

### A. *The California Family Rights Act Claim*

■■ Gradilla asserts that his termination was unlawful because he had a right to family care and medical leave under the California Family Rights Act ("CFRA"). The relevant portion of the CFRA provides:

(a) [I]t shall be an unlawful employment practice for any employer . . . to refuse to grant a request by any employee . . . to take up to a total of 12 work-weeks in any 12–month period for family care and medical leave. . . .

. . . .

(c) For purposes of this section:

---

Tuesday, October 19. This factual dispute is irrelevant to our decision.

**4.** In the original Complaint, this cause of action was erroneously captioned "Refusal to Accommodate Disability in Violation of Gov-

ernment Code Section 12940(a)." Gradilla corrected the error on June 20 by filing a Notice of Errata stating that the correct caption for the claim was "Violation of Government Code Section 12945.2."

(3) "Family care and medical leave" means . . .

(B) Leave to care for a parent or spouse who has a serious health condition.

Cal. Govt.Code § 12945.2. The CFRA was modeled on the federal Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601–2654, and it incorporates FMLA regulations to the extent that they do not conflict with California law. Cal. Admin. Code, tit. 2, § 7297.10. Cases interpreting the FMLA apply equally to CFRA claims in the absence of a conflict. *Mora v. Chem–Tronics,* 16 F.Supp.2d 1192, 1202–03 (S.D.Cal.1998). Here, there is no conflict between CFRA and FMLA law. We therefore apply federal FMLA law to Gradilla's CFRA claim.

In order to qualify for CFRA leave under the statute, Gradilla must prove that he: (1) made a "request"; (2) for leave to "care for" a parent or spouse; (3) who has a "serious health condition." Only the first two elements are at issue in this appeal.

### 1. *The request for leave, notice, and certification*

In his declaration in support of Ruskin's motion for summary judgment, Plant Superintendent John Shaver claimed: "Gradilla did not inform me that he needed to go to Mexico because of any health condition experienced by his wife." However, Gradilla asserted in his deposition that he told Mr. Shaver "[t]hat it was important for me to go to Mexico because my wife felt ill and that it was an emergency." Gradilla's declaration similarly states that he "requested permission from my supervisors to leave to accompany my wife to Mexico due to her heart condition." Gradilla also testified in his deposition that his supervisors knew about his wife's heart condition well before the day he accompanied her to Mexico.

■ The FMLA regulations provide that employees "need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed for [a qualifying reason]." 29 C.F.R. § 825.302(c); *see also Bachelder v. America West Airlines, Inc.,* 259 F.3d 1112, 1130–31 (9th Cir.2001) ("The FMLA does not require that an employee give notice of a desire to invoke the FMLA. Rather, it requires that the employee give notice of need for FMLA leave.") (quoting *Price v. City of Ft. Wayne,* 117 F.3d 1022, 1026 (7th Cir.1997)). It is the employer's responsibility, not the employee's, to determine whether a leave request is likely to be covered by the FMLA. *Bailey v. Southwest Gas Co.,* 275 F.3d 1181, 1185 (9th Cir.2002); *Bachelder,* 259 F.3d at 1130–31. If the employer requires more information in order to decide whether the FMLA applies to an employee's leave request, it is the employer's duty to make further inquiries until it obtains enough information to make a determination. *Bailey,* 275 F.3d at 1185; *Bachelder* 259 F.3d at 1130–31. In this case, Gradilla testified that his employers knew about his wife's medical condition, and that he mentioned her medical condition as the reason he needed to accompany her to Mexico. On this evidence, a reasonable jury could conclude that Gradilla provided sufficient notice to his employer under the CFRA.

The district court found that Gradilla could not claim CFRA's protections because he failed to follow CFRA's notice and certification provisions. This finding was in error. CFRA's notice provision reads: "If the employee's need for a leave pursuant to this section is foreseeable, the employee shall provide the employer with reasonable advance notice of the need for the leave." Cal. Gov't Code § 12945.2(h). CFRA's text does not specify what an employee should do if his need for leave is not foreseeable. However, FMLA regula-

tions state that when the need for leave is unforeseeable, the employee should give notice "as soon as is practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303. As for certification, the CFRA provides that: "An employer *may* require that an employee's request for leave to care for a child, a spouse, or a parent who has a serious health condition be supported by a certification issued by the health care provider of the individual requiring care." Cal. Gov't Code § 12945.2(j)(1) (emphasis added). This provision does not state that an employee *must* provide certification in order to obtain leave, as the district court held. Rather, it provides that an employer *may* require certification if it so chooses. However, Ruskin did not require such certification. Rather, its written policy allows it to ask for certification when it believes it advisable to do so. The policy reads: "Ruskin *may* require that a family leave related to a serious health condition be supported by certification." Gradilla testified that, although his supervisors knew about his wife's medical condition, none of them ever asked him to provide certification. Ruskin offered no evidence to the contrary. The district court erred in its finding that Gradilla violated CFRA's certification requirement.

■ The district court also erred when it found that Gradilla was not protected by the CFRA because "his wife's doctor never requested or required him to accompany her to Mexico." Neither the CFRA nor the FMLA regulations provides that a doctor must "request" or "require" an employee to provide medical care to a relative who has a serious health condition in order for the employee to qualify for the Act's protection. Rather, an employee is entitled to CFRA leave if the purpose of the leave is to "care for" a family member with a serious medical condition.

### 2. Leave "to care for" a family member

■ Gradilla's claim under the CFRA nevertheless fails because he has not presented evidence that he left work "to care for" his spouse within the scope of the CFRA. The scope of the CFRA does not include a requirement that an employer must accommodate an employee whose spouse decides, in spite of her serious medical condition, to travel away from her home for reasons unrelated to her medical treatment.

In *Marchisheck v. San Mateo County*, 199 F.3d 1068 (9th Cir.1999), an employee left work to move her son to the Philippines. This court held that the employee had not created a factual dispute on the question of whether her son had a serious medical condition under the FMLA. The court further held that *even if* the son had a serious medical condition, the employee was not entitled to FMLA leave because she was not moving her son so that he could receive medical or psychological treatment. We stated:

> [Plaintiff] was not moving Shaun so that he could receive superior—or any—medical or psychological treatment. Indeed, Plaintiff had no specific plans to seek medical attention for Shaun when she reached the Philippines, and he did not see a doctor of any kind for more than five months after he moved overseas. Further, it is undisputed that there were no psychological services available within a three-hour drive of the rural area of the Philippines to which Plaintiff took Shaun.

*Marchisheck*, 199 F.3d at 1076.

In *Marchisheck*, the son apparently did not require medical or psychological treatment during his travel, but in this case, Gradilla's wife needed her husband to provide medical and psychological care during their trip to Mexico. However, this is a distinction without a difference under the

CFRA, because in *Marchisheck* and in this case, the *purpose* and *destination* of the travel was to travel *away from home* for personal, not medical, reasons. In both cases, the person with a serious medical condition was distancing themselves from medical treatment.

The relevant administrative rule, 29 C.F.R. § 825.116(a), (b), gives several examples of "caring for" a family member:

(a) It includes situations where, for example, because of a serious health condition, the family member is unable to care for his or her own basic medical, hygienic, or nutritional needs or safety, or is *unable to transport himself or herself to the doctor, etc.* The term also includes providing psychological comfort and reassurance which would be beneficial to a child, spouse, or parent with a serious health condition *who is receiving inpatient or home care.*

(b) The term also includes situations where the employee may be needed to fill in for others who are caring for the family member, or to make arrangements for changes in care, *such as transfer to a nursing home.*

(Emphasis added).

These examples suggest that "caring for" a family member with a serious health condition involves some level of participation in ongoing medical or psychological treatment of that condition, *either inpatient or at home.* The regulations mention "transport" which is *"to the doctor, etc."* and "transfer" which is *"to a nursing home." Accord Pang v. Beverly Hospital, Inc.,* 79 Cal.App.4th 986, 94 Cal.Rptr.2d 643 (2000) (employee did not leave work to "care for" her elderly mother with a serious health condition when she helped her mother move from a two-story home to a one-level apartment.).

It is undisputed that "care" includes both physical and psychological care, and that a parent or spouse can provide the care. In *Scamihorn v. General Truck Drivers,* 282 F.3d 1078 (9th Cir.2002), we held that the employee had created a triable issue of fact regarding his eligibility for FMLA leave when the employee left work to move to his father's *home* because his presence *in the home* providing psychological support helped in the father's recovery from depression. *Scamihorn,* 282 F.3d at 1088. *Scamihorn* does not support the proposition that physical or psychological care by a spouse or parent is covered by the FMLA whenever the family member with a serious health condition chooses to travel for non-medical reasons.

The circumstances of the travel in this case, a funeral in Mexico, were sympathetic, unfortunate, and lawful. If we hold that the CFRA covered this situation, an employer would be required to grant family and medical leave whenever an employee has a spouse, parent, or child with a serious medical condition, and that family member requested the employee's assistance while traveling. The travel could be for unlimited personal reasons, to any destination, for lawful or unlawful purposes, for business or vacation. Courts would then have to decide, in each case, the worthiness of the family member's travel motives. Such a broad scope finds no support in the statute, regulations, or case law.

The judgment of the district court dismissing the claim under the CFRA is affirmed.

B. *The Workers' Compensation Retaliation Claim*

■ Gradilla contends, in the alternative, that he was fired in retaliation for filing a fourth workers' compensation claim. It is unclear whether Gradilla's complaint states a claim for violation of Cal. Labor Code § 132a, a claim for which the exclusive forum is the Workers' Com-

pensation Appeals Board, or whether it states a claim for retaliation in violation of the public policy expressed by § 132a. *See City of Moorpark v. Superior Court,* 18 Cal.4th 1143, 1161, 77 Cal.Rptr.2d 445, 959 P.2d 752 (1998) (holding that plaintiff may simultaneously pursue § 132a claim before Workers' Compensation Appeals Board and action in state court for common-law violation of public policy). However, we need not decide this question because we agree with the district court that, even if we construe the complaint to plead a public policy violation, Gradilla cannot establish a prima facie case of wrongful termination.

To make a prima facie case of wrongful termination, Gradilla must show: (1) he was engaged in a protected activity; (2) he subsequently was subjected to an adverse employment action; and (3) there is a nexus, or causal link, between the protected activity and the adverse employment action. *See Yartzoff v. Thomas,* 809 F.2d 1371, 1375 (9th Cir.1987); *Flait v. N. Am. Watch Corp.,* 3 Cal.App.4th 467, 475–76, 4 Cal.Rptr.2d 522 (1992) (holding that California state law claims of retaliatory discharge are evaluated under the framework used in federal law relating to discrimination and retaliation). Gradilla's claim fails because he did not establish a nexus between the filing of the claim and his termination. Gradilla presented no evidence, either in his deposition or in the form of a declaration, that Ruskin knew that he had filed, or was going to file, a workers' compensation claim before it made the decision to terminate him. The link is not established simply by evidence that the insurance company notified Gradilla of its receipt of the claim; rather, there must be some evidence that Ruskin was aware that a claim had been filed or that it had participated in the filing process. Gradilla offered no evidence on this point. He did present evidence that when his wife called he was obtaining written

permission to see the doctor because his shoulder hurt; however, the fact that he asked to see a doctor does not warrant a conclusion that Ruskin knew that he had suffered an industrial injury and that he intended to file a workers' compensation claim. It is possible, as Gradilla argues, that the trip from the plant to the doctor is the first step in a chain of events that always and inevitably leads to the filing of a workers' compensation claim. If that is true, Gradilla's request to see the doctor would have put Ruskin on notice that he was about to file a fourth claim. However, there is no evidence in the record to support such a theory. Accordingly, we affirm summary judgment for Ruskin on this claim.

## C.  *The Breach–of–Contract and Tort Claims*

It is undisputed that Gradilla was a member of a union, and that his position was covered by the terms of a collective bargaining agreement ("CBA"). The district court found that, because of the existence of the CBA, Gradilla's common law breach of contract and tort claims are preempted by § 301 of the Labor Management Relations Act ("LMRA"). We affirm the district court's judgment.

Section 301 of the LMRA preempts state law claims that are based directly on rights created by a collective bargaining agreement as well as claims that are substantially dependent on an interpretation of a collective bargaining agreement. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The claim that Gradilla was contractually afforded protection against discharge is necessarily based on the collective bargaining agreement, therefore Gradilla's breach-of-contract claim is preempted by § 301 of the LMRA.

Gradilla's tort claims for negligent and intentional infliction of emotional dis-

tress are also preempted. Section 301 does not preempt claims for state law rights that do not reasonably require the court to interpret an existing provision of a CBA to resolve the dispute. *See Cramer v. Consolidated Freightways, Inc.,* 255 F.3d 683, 697 (9th Cir.2001). However, because Gradilla has not established a claim under the CFRA or a claim for retaliatory discharge under Cal. Labor Code § 132a, his tort claims resulting from the termination of his employment arise out of the same conduct which formed the basis of his breach of contract claim and are also preempted. *See Chmiel v. Beverly Wilshire Hotel Co.,* 873 F.2d 1283, 1286 (9th Cir.1989).

## CONCLUSION

Gradilla's claim under the CFRA fails because the personal travel to Mexico for a funeral is not within the scope of the statute. Gradilla did not present enough evidence to create a triable issue of fact with respect to his workers' compensation retaliation claim, and his breach of contract claim and tort claims are preempted by § 301 of the LMRA. Therefore, we affirm the district court's grant of summary judgment.

AFFIRMED.

REINHARDT, Circuit Judge, dissenting:

This case exemplifies compassionless conservatism. The majority reads the California Family Rights Act (sometimes referred to as the "Act"), a statute de-signed to afford a minimal amount of humane and decent treatment to working people with families, as if it were a rigid code intended to limit their rights. The majority ignores the plain language of the statute as well as its purpose and instead poses an imaginary chain of horrors, claiming that a plain reading of the statute would cause courts to have to (horrors!) make decisions "in each case." On that basis it grants summary judgment to the corporate defendant.[1]

That a poor, hardworking, Hispanic man, struggling to support his family by performing manual labor, could be fired by his employer under the circumstances of this case is almost unimaginable. That a court could reach the decision the majority does here is even more incomprehensible.

The facts are simple. Arnulfo Gradilla, a loyal, non-English-speaking, employee of a corporate-owned machine shop who had several times been injured on the job but had always returned to work as soon as possible, suffered a comparatively minor fourth industrial accident. While in the company office seeking permission to see the doctor, he received notice that his father-in-law had died suddenly in Mexico and that his wife, who had a serious heart condition, needed him to accompany her on her short trip home for the funeral. The employer had long been aware of his wife's serious medical condition. Gradilla asked his supervisor for leave on the ground that he needed "to leave to accompany my wife to Mexico due to her heart condition." He was granted the leave.[2]

---

1. Although all the claims are state claims, the corporate defendant, who was incorporated in Delaware and whose principal place of business is in Missouri, removed the case from state to federal court on the ground of diversity.

2. There is some dispute as to whether permission was actually granted. The employer admits that Gradilla told his supervisor "that he had just received a phone call from his wife informing him of the sudden death of his father-in-law in Mexico." It also admits that Gradilla told the supervisor that as a result he had to go to Mexico. According to the supervisor, Gradilla asked "what he was to do in the matter and I informed him that I could not tell him what to do ...," although the supervisor volunteered that bereavement leave was unavailable. Finally the supervisor

When Gradilla returned from Mexico a few days later and reported for work, he was immediately ordered to go home and was then fired for wholly meritless and possibly pretextual reasons, including his failure to submit a medical certificate that, the majority acknowledges, he had not been asked to file and was not required to furnish; failure to attend a mandatory overtime workday on Saturday that the company did not announce until after he had left for Mexico;[3] and failure to call in daily, another requirement which was not applicable in his case. Indeed, the majority does not attempt to offer *any* legitimate reason for the discharge. The company may in truth have had an ulterior motive, as will be discussed below, but that in no way appears to trouble the majority.

The majority simply washes its hands of the employer's unconscionable treatment of a low-income worker struggling to take care of his seriously ill wife—precisely the sort of person the California Family Rights Act was designed to protect—and creates a wholly baseless limitation on the statute that benefits the undeserving corporate employer and deprives Gradilla of the Act's protection. Under the limitation conjured up by the majority, the statute does not apply to Gradilla because the funeral his seriously ill spouse had to attend was in her father's hometown instead of in the city in which the corporate employer's plant is located. There is simply no basis in law or precedent for such an uncharitable reading of the Act.

There is another claim that the majority also wrongly bars Gradilla from pursuing. Gradilla asserts that the real reason he was fired was because on the day he accompanied his wife to Mexico he filed a Workers' Compensation claim. The majority ignores the plain evidence of retaliation in the record, concluding contrary to the undisputed facts that his employer did not know about his Workers' Compensation claim when it discharged him. Gradilla should be permitted to proceed to trial on both of his claims—his claim under the California Family Rights Act, and his claim for wrongful termination in violation of the public policy expressed by § 132a of the California Labor Code.

I.

Notwithstanding the majority's contention, there is no requirement in the California Family Rights Act, the regulations issued pursuant to the federal Family Medical Leave Act, California case law, or our own precedent that, in order to merit protection under the Act, care must take place in the home or en route to or from the doctor's office. Nothing in the language or structure of the Act even suggests such a rule, and nothing in its spirit or purpose permits so shallow and callous an interpretation of its provisions. More-

states, "I did not inform Gradilla that he could go to Mexico." However, because we are reviewing a grant of summary judgment, we view the evidence in the light most favorable to the nonmoving party, and we resolve factual disputes in Gradilla's favor. *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1014 (9th Cir.2000). In any event, this factual dispute is irrelevant to the California Family Rights Act claim. For the reasons discussed below, Gradilla had the right under the Act to take leave to care for his wife, who had a serious health condition, regardless of whether his employer granted him permission.

3. Gradilla received the phone call from his wife on a Wednesday and reported back to work the following Monday. Although the company claims it posted a notice regarding the Saturday work before Gradilla left for Mexico, we must accept Gradilla's version of the facts. In any event, whether the notice was posted prior to Gradilla's departure is irrelevant.

over, the cases the majority cites are plainly irrelevant.

"It is a venerable principle of statutory interpretation 'that where the Legislature makes a plain provision, without making any exception, the courts can make none.'" *Xi v. United States I.N.S.*, 298 F.3d 832, 836 (2002) (quoting *French's Lessee v. Spencer*, 62 U.S. (21 How.) 228, 238, 16 L.Ed. 97 (1858)). Here, the plain text of the California Family Rights Act provides without qualification that an employee is entitled to protection when he takes "[l]eave to care for a parent or spouse who has a serious health condition." Cal. Govt. Code §§ 12945.2(a), 12945.2(c)(3)(B).[4] The statute itself places no limits on the location at which care may be given—as long as the employee actually provides care, and the relative actually has a serious medical condition.

The majority ignores the plain text of the statute, relying instead on a strained interpretation of the regulations governing the federal Act. As noted by the majority, those regulations give several *examples* of "caring for" a family member:

(a) ["Caring for" a family member] includes situations where, for example, because of a serious health condition, the family member is unable to care for his or her own basic medical, hygienic, or nutritional needs or safety, or is unable to transport himself or herself to the doctor, etc. The term also includes providing psychological comfort and reassurance which would be beneficial to a child, spouse, or parent with a serious health condition who is receiving inpatient or home care.

(b) The term also includes situations where the employee may be needed to fill in for others who are caring for the family member, or to make arrangements for changes in care, such as transfer to a nursing home.

29 C.F.R. § 825.116(a)-(b). Nowhere does the regulation state that the examples are exclusive. Nor, even more important, does the regulation anywhere state that in order to qualify for the federal Act's protection, an employee who *actually provides basic medical, hygienic, or nutritional care* to a family member who is unable to perform those tasks for himself must do so *in the home,* or that the statutory protections are forfeited when the family member is required to travel for an essential purpose other than medical necessity. There is no justification for the majority's invention of such a needless, unwarranted, and cruel requirement; nor for its mindless suggestion that if the Act were construed to apply to an employee who accompanied his seriously ill wife to her father's funeral, it would necessarily also be applicable when the reason for the seriously ill wife's travel was to rob a bank or commit some other crime.

The majority's interpretation of the federal regulation contradicts its purpose. The regulation's aim is not to limit the kinds of activities that qualify as care, but to demonstrate that some activities that we may not normally think of as "care" are nevertheless covered by the Act, so long as those activities are related to a serious health condition. The vision of care expressed by the regulations is expansive; protection is extended not only for basic life support activities like feeding and medication monitoring or administration, but for ancillary support services like the provision of psychological support, transportation to the doctor, and making

---

4. Another provision grants "leave for reason of the birth of a child of the employee, the placement of a child with an employee in connection with the adoption or foster care of the child by the employee, or the serious health condition of a child of the employee." Cal. Govt.Code § 12945.2(c)(3)(A).

arrangements for long-term institutional care, services which are not "care" in the ordinary sense. The regulations seek only to ensure that these indirect forms of "care" have a clear nexus with a serious health condition. Hence, services such as the provision of transportation or psychological reassurance, which may or may not be related to a serious medical condition, are covered, but only if some other element is present to provide the nexus: psychological reassurance *to someone who is receiving inpatient care,* transportation *to the doctor, etc.* (and the etc. is wholly undefined). These phrases seek to ensure that services that would not ordinarily be covered because they do not constitute the ordinary providing of care, but are covered under the statute because of their ancillary status, are in fact related to a serious health condition. The italicized examples are not, however, intended to place geographical or other limitations on the provision of the most basic forms of care or to decree that *all* medical care must be afforded in the home or while traveling to the doctor.

The regulation recognizes what the majority does not: The provision of direct medical, hygienic, or nutritional care to a spouse who cannot care for herself is fundamentally different from the provision of ancillary services that may on particular occasions be necessary. In the case of direct assistance with basic needs, there is no necessity for an additional element to ensure the nexus between the care activity and the serious medical condition. There is simply no circumstance in which, for example, a child would need to administer medications to an elderly parent, who cannot himself administer them, for some reason apart from the parent's serious medical condition. The protections provided by the California Family Rights Act and the federal Family and Medical Leave Act for direct forms of care do not depend on whether that care takes place in the home or in a motel room, in California or in Mexico. Seriously ill persons who need a care-giver to accompany them when they leave their homes do not lose their status as seriously ill spouses or parents whenever they venture outdoors or travel to some location or office other than their doctor's. That is why the regulations do not place a geographic restriction on coverage for such care, or contain any restriction to the effect that basic care must be provided only in the home.

According to the evidence in the record, the care that Gradilla provided during his wife's short trip to Mexico falls squarely within the first clause of the regulation, which covers situations in which "because of a serious health condition, the family member is unable to care for his or her own basic medical, hygienic, or nutritional needs or safety." In addition to her heart condition, Mrs. Gradilla suffered from a nervous condition that would strike suddenly and cause her heart to beat dangerously fast. At these times, Mrs. Gradilla would be unable to measure the correct dosage of medicine for herself, and Gradilla's presence was necessary to administer her medication and to calm her down. Mrs. Gradilla especially needed her husband when she went home for her father's funeral because his sudden death caused her much anxiety and stress, aggravating her heart condition and creating a heightened risk that she would have an episode in which she would need her husband's immediate assistance. By accompanying his wife so that he could administer her medication in the event that she could not do so herself, Gradilla cared for his seriously ill wife in the most basic way, and he is protected by the California Family Rights Act regardless of where the caretaking activities took place.

The majority's position is unsupported by our case law. *Marchisheck* did not

hold that accompanying a covered relative on a trip forfeits the protection of the Family and Medical Leave Act unless the travel itself is for a medical purpose. Rather, it held that Marchisheck's trip with her son was not covered because he did not have a medical condition that required her presence during the travel or afterwards, and because the effect of the travel was to transfer her son from a place where he had previously received treatment to one where he would receive no treatment for any of his asserted conditions. 199 F.3d at 1076. *Marchisheck* is, in short, a case about a covered relative who did *not* have a serious health condition and a mother who did *not* provide medical care to him. It is of no relevance here.

Unlike in *Marchisheck*, Gradilla's wife had a serious medical condition, and, by accompanying her on her emergency trip, Gradilla provided basic ameliorative and precautionary care for the period of her brief family crisis. Accordingly, Gradilla was protected by the Act throughout his wife's brief trip to her father's funeral, a trip during which his presence was necessary precisely because his caregiving services might be required at any time. Gradilla did present evidence that, while in Mexico, Mrs. Gradilla suffered a nervous episode, and that he actually administered her heart medication, a task that she was unable to perform for herself at that time. However, while this evidence adds factual support to his claim, it is by no means necessary in order to establish it.

*Pang v. Beverly Hospital, Inc.*, 79 Cal. App.4th 986, 996, 94 Cal.Rptr.2d 643 (2000), also cited by the majority, does not in any way support the majority's unprecedented limitation on the California Act. *Pang* held only that a plaintiff who took time off to help her mother move was not covered by the Act because the presence of an additional person was needed in order to help the movers arrange her mother's furniture, not for the purpose of assisting with her mother's medical condition. Gradilla obviously was not arranging furniture. He was providing the care that was required in order to try to ensure that his wife would survive.

The majority's reading of the FMLA regulations, and its application of those regulations to this case, run directly counter to the intent of the California legislature in enacting the California Family Rights Act. The Act's legislative history plainly states: "The overarching theme of this legislation has been the need to permit workers to take leave to care for their families without fear of job loss, and, *except for limitations based on the number of employees or familial relationship, the bill should have the broadest possible implementation.*" *See* Assembly Daily Journal, 1991–92 Reg. Sess. 5547, ¶ e1 (Ca.) (emphasis added). The California legislature did not intend that a worker like Gradilla, who took leave in order to care for a wife with a serious medical condition, would lose the Act's protection and his job simply because the care took place outside the home. I would hold that the California Family Rights Act protects Gradilla, just as it protects every worker in California who must take leave from work to care for a seriously ill spouse, parent, or child.

The employer stated below that it fired Gradilla because he violated its three-day no-call/no-show policy. Neither the district court nor the majority discussed this pretextual reason. However, if his employer did apply this rule to Gradilla, and it is doubtful on this record that it did, it did so in contravention of the Act. The federal regulations state that an employee shall provide the employer with notice of the "anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c). Gradilla did so. The FMLA regulations also allow an employer to require an employee

to "report *periodically*" on his leave status and intent to return to work. 29 C.F.R. § 825.309 (emphasis added). The reporting policy, however, "must take into account all of the relevant facts and circumstances related to the individual employee's leave situation." *Id.* Here, the employee unquestionably notified his employer of the facts regarding the emergency leave at the moment he learned of them. In addition, he had his English-speaking son call in and inform the employer that he was at the airport, ready to leave on his trip, and that he would be back at work on Monday. Given that Gradilla, a sheet metal assembler, went on an emergency trip to Mexico that was scheduled to last only three working days (if indeed the last-minute, mandatory overtime workday on Saturday counts as a workday under the circumstances of this case), a requirement that he call in every day would have served no legitimate purpose and in any event would have contravened the FMLA regulations. On the record before us, Gradilla was entitled to leave under the California Family Rights Act, and summary judgment for his employer was therefore improper. Gradilla's claim under the Act should be remanded for trial.

## II.

I disagree with the majority with respect to Gradilla's other claim, as well. Gradilla alleged that he was a good worker who was fired in retaliation for having filed a fourth meritorious worker's compensation claim. He alleges that the company's explanation that he was fired for violating its call-in policy is simply a pretext. In such case, the discharge would violate the public policy expressed by § 132a of the California Labor Code. Given the company's complete inability to advance a legitimate explanation for Gradilla's discharge, this claim should also proceed to trial.

The majority's explanation for rejecting Gradilla's wrongful termination claim—that there is no evidence in the record that the employer knew about the Workers' Compensation claim—is simply incorrect. The employer must have known about the claim because it sent the claim form to its insurance company *before* it fired Gradilla. In California, an employer is required to provide an injured employee with a claim form within one working day of receiving notice of the injury. Cal. Labor Code § 5401(a). The claim is "filed" when the worker fills out the form and gives it to his employer. *Id.* § 5401(c). The employer is then required to send the form to its insurance agent for processing. *Id.* On Tuesday, October 19, Gradilla informed his employer that he had been injured that day. On October 20, he filled out the paperwork related to the injury. That same day, he left for Mexico. When he returned to work on Monday, he was told to go home and wait for a call. Three days later, on October 28, he was fired. *The same day that he was fired,* the company's insurance company wrote (but apparently did not mail) Gradilla a letter that said that it was "handling [his] workers' compensation claim on behalf of Ruskin Mfg." The letter stated that the injury had occurred on October 19, and that the claim had already been given a file number. There is simply no way that the employer's insurance company could have received notice of the claim unless the employer had mailed it to them. And the employer could not have mailed it to them unless Gradilla had completed the claim form when he was in the office on October 20. Thus, the employer *had* to have known about the claim before it fired Gradilla.

To establish a prima facie case of wrongful termination, Gradilla must establish that (1) he was engaged in a protected activity; (2) he subsequently was subjected to an adverse employment action; and (3)

there is a nexus, or causal link, between the protected activity and the adverse action. If a prima facie case is established, the burden shifts to the defendant to articulate a non-retaliatory explanation for the firing. However, the plaintiff may then show that the defendant's explanation is pretextual. *See Yartzoff v. Thomas,* 809 F.2d 1371, 1375 (9th Cir.1987); *Flait v. North American Watch Corp.,* 3 Cal. App.4th 467, 476, 4 Cal.Rptr.2d 522 (1992) (California state law claims of retaliatory discharge are evaluated under the framework used in federal law relating to discrimination and retaliation).

There is no doubt that Gradilla met the first two conditions. He filed a Workers' Compensation claim, and he was fired. The only question with respect to whether he can establish a prima facie case is whether he can show a nexus. In California, it is not difficult to make such a showing. Under California law, "[t]he retaliatory motive is 'proved by showing that plaintiff engaged in protected activities, that his employer was aware of the protected activities, and that the adverse action followed within a relatively short time thereafter.'" *Morgan v. Regents of Univ. of Cal.,* 88 Cal.App.4th 52, 69, 105 Cal. Rptr.2d 652 (2000). "Causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1065 (2000); *see also Passantino v. Johnson & Johnson Consumer Products,* 212 F.3d 493, 507 (9th Cir.2000) (same, citing cases). In this case, the adverse employment action was taken within a week after Gradilla filed his fourth Workers' Compensation claim. This short time frame certainly qualifies as "on the heels of protected activity" and is enough to create a prima facie case.

Once the plaintiff establishes a prima facie case, the burden shifts to the defen-

dant to put forth a legitimate, nondiscriminatory reason for the termination. In this case, the employer relies on its contention that Gradilla violated several company rules in connection with his trip on which he accompanied his wife to Mexico. However, its proffered reasons are not particularly credible and are insufficient to overcome Gradilla's claim of pretext. First, even the majority admits that some of the notice and certification requirements relied on by the employer did not apply to Gradilla. Second, there are genuine questions of material fact with respect to its other proffered reasons. For example, the employer contends that Gradilla left work without permission; however, Gradilla has offered evidence that he was given permission to leave. Because there are genuine questions of material fact, the employer did not show as a matter of law that it had a legitimate, nonretaliatory reason for the termination. Summary judgment in its favor was therefore improper. *See Strother v. S. Cal. Permanente Med. Group,* 79 F.3d 859, 870 (9th Cir.1996) (internal quotation marks omitted) (stating that "a plaintiff need produce very little evidence of [retaliatory] motive to raise a genuine issue of fact" as to discriminatory intent); *Sada v. Robert F. Kennedy Med. Ctr.,* 56 Cal.App.4th 138, 154, 65 Cal.Rptr.2d 112 (1997) (holding that because employer did not establish as a matter of law that it took adverse employment action for legitimate, nondiscriminatory reason, trial court erred in granting summary judgment to employer).

A reasonable jury could easily find that the employer's proffered reasons were pretextual and that it acted with retaliatory intent. Certainly, if the jury believes that Gradilla had permission to leave, it may infer from the employer's failure to raise any legitimate, nonretaliatory reason for terminating him that it acted with retaliatory intent. *See Reeves v. Sanderson*

*Plumbing Products,* 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (holding that "the trier of fact [may] infer the ultimate fact of discrimination from the falsity of the employer's explanation"). The jury could also consider the undisputed evidence in the record that Gradilla was a good and loyal worker, who did nothing wrong except suffer repeated industrial accidents that were not his fault. *See Sada,* 56 Cal.App.4th at 156, 65 Cal.Rptr.2d 112 (relying in part on plaintiff's good work history to reverse grant of summary judgment to employer). A jury that considered these factors in combination with the timing of the termination decision and its skepticism of the employer's story, could reasonably conclude that the employer had a retaliatory motive for firing Gradilla. In this connection, it might well be permissible for a jury to conclude simply that an employer who fired a blue collar employee on the ground that he accompanied his seriously ill wife to her father's funeral is likely to have had some other motive, especially given that the employee provided notice of his intent to take the trip as soon as he became aware of his father-in-law's sudden death. I would hold that the district judge erred in granting summary judgment to the corporate defendant on this claim as well.

### III.

Gradilla's tort claims for negligent and intentional infliction of emotional distress are not preempted because they are based on rights that are independent of the collective bargaining agreement. Under California law, no matter the terms of an express or implied contract, an employer may not fire an employee for a reason that contravenes fundamental public policy as expressed in a constitutional or statutory provision. *Cramer v. Consol. Freightways,* 209 F.3d 1122, 1134 (9th Cir.2000). Claims based on violations of fundamental public policy are not preempted by § 301.

*Eldridge v. Felec Services, Inc.,* 920 F.2d 1434 (9th Cir.1990), citing *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 409, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). The California courts have determined that the California Family Rights Act embodies a fundamental public policy, *Nelson v. United Techs.,* 74 Cal.App.4th 597, 611, 88 Cal.Rptr.2d 239 (1999), as does the anti-retaliation provision of the Workers' Compensation code. *City of Moorpark v. Superior Court,* 18 Cal.4th 1143, 77 Cal.Rptr.2d 445, 959 P.2d 752 (1998). Because the claims for negligent and intentional infliction of emotional distress are based on the same rationale that underlies the California Family Rights Act and retaliation claims, they are not preempted by § 301.

Gradilla's tort claims cannot be resolved on summary judgment. To demonstrate intentional infliction of emotional distress under California law, Gradilla must show that his employer's conduct was "extreme and outrageous, exceed[ing] all bounds of that usually tolerated in civilized society." *Cramer,* 209 F.3d at 1133 (internal citations and quotation marks omitted). To prevail on the negligent infliction of emotional distress claim, Gradilla must demonstrate that his employer breached a duty to protect his well-being. *Id.* These questions—whether Gradilla's employer breached a duty and, if so, the degree of outrageousness involved in the breach—are the kinds of questions a jury must answer. We are obligated to remand the tort claims for trial.

### IV.

I repeat. Gradilla is a poor, hardworking, blue collar laborer who struggles to provide for his family and to care for his sick wife. He has been a good and loyal employee, who went to work every day and worked hard, even though he suffered a

968

number of work-related injuries. The father of his seriously ill wife died in a sudden accident, and it was necessary for him to care for her during her short trip to Mexico for the funeral.

There appears to be no justification for the way that Gradilla's employer treated him upon his return, and there is none for the decision that the majority reaches today. Gradilla is without doubt entitled to a trial on his claims. However, instead of applying the California Family Rights Act as it is written, a law that by its plain text protects the rights of workers like Gradilla, the majority has chosen to create a wholly new, unwarranted, and unfair limitation that restricts the reach of the Act, a limitation not found in or supported by the statute, the regulations, California case law, or our own precedent, and a limitation that contradicts the very spirit and purpose of the Act. Further, despite the fact that Gradilla's employer has offered no colorable, legitimate justification for Gradilla's discharge, the majority ignores the clear indicia of retaliation in the record. Gradilla alleged that the true reason for his discharge was that he filed a Workers' Compensation claim. He is entitled to proceed on the violation of public policy count as well. All in all, Gradilla deserves far better treatment than he received from this court. I respectfully dissent.