**XIN LIU, Plaintiff–Appellant,**

v.

**AMWAY CORPORATION; Does 1–50 Inclusive, Defendants–Appellees.**

**No. 01–57013.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 2002.

Filed Oct. 30, 2003.

Ray Keramati, Western Legal Group, APC, San Diego, CA, for the plaintiff-appellant.

Maria K. Aarvig, Creason & Aarvig, LLP, for the defendant-appellee.

Before PREGERSON, RYMER, and McKEOWN, Circuit Judges.

PREGERSON, J., delivered the opinion of the Court as to Parts I, IIA, IIB, IIC, and III in which McKEOWN, J., joined. RYMER, J., delivered the opinion of the Court as to Part IID, in which McKEOWN, J., joined. PREGERSON, J., filed a dissenting opinion as to Part IID. RYMER, J., filed an opinion concurring as to Parts I, IIC, and III, and dissenting as to Parts IIA and IIB.

## OPINION

PREGERSON, Circuit Judge, with whom McKEOWN, Circuit Judge, joins.

Xin Liu appeals the district court's grant of summary judgment in favor of her former employer, Amway Corporation,[1] on her claims of sex discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e—2000e–17 (2003), and the California Fair Employment and Housing Act (FEHA), Cal. Gov't Code §§ 12900–12996; interference with protected leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2612(a), and its state counterpart, the California Family Rights Act (CFRA), Cal. Gov't Code § 12945.2(a); breach of implied-in-fact contract and covenant of good faith and fair dealing; and violation of California public policy. The district court held that Liu failed to raise a genuine issue of material fact as to whether Amway's reasons for terminating her were pretextual and, therefore, granted Amway summary judgment on Liu's retaliation and discrimination claims under Title VII and FEHA. In addition, the district court held that Amway had not interfered with Liu's FMLA/CFRA leave because Liu was on leave when she was terminated. The court also dismissed her remaining claims on various state grounds.

---

**1.** Defendant Amway is now named Alticor. We refer to the defendant as "Amway" throughout this opinion.

We reverse the district court's grant of summary judgment on Liu's FMLA, CFRA, and violation of California public policy claims. We affirm the district court's grant of summary judgment on Liu's breach of her implied-in-fact contract claim, breach of the covenant of good faith and fair dealing claim, and Title VII and FEHA retaliation and discrimination claims. We remand to the district court for further proceedings in accordance with this opinion.

## I. BACKGROUND

In May 1997, Xin Liu was the first scientist hired in the Concentrate Development Department of the Nutrilite Division of Amway Corporation ("the Department"). She was the most experienced member of her department consisting of four scientists. Her primary duties were the research and development of plant concentrates.

In October 1997, Liu's supervisor, David Groh, the group leader of the department, left the Nutrilite division. He was replaced by Kha Tran who then became Liu's supervisor.

On June 27, 1998, Liu went on maternity leave. She delivered her baby in early August and set her expected return date as September 19, 1998. While she was on leave, Tran assumed responsibility for her work. In his deposition, he claimed that he was forced to work evenings and sometimes weekends to "pick up the slack and do[ ] her job and mine at the same time." He estimated that he spent 30% of his time doing Liu's work. He stated that he was anxious to have her return.

In early September 1998, a few weeks before Liu was scheduled to return, Tran telephoned her to ask whether she would be returning to work on September 19th. According to Liu, Tran reminded her that he expected her to get back to work and that he had "been holding projects" for her. Liu responded that she had experienced fainting spells and fatigue and felt she needed more time to recover from childbirth. Tran allegedly replied "you can't die yet '....[w]e need you for the projects" and insisted she commit to a specific return date. She then requested an extension of her return date until December. Tran denied her request immediately. He stated again that she needed to return to work because he was holding projects for her.

About a week before her scheduled September return date, Liu and her husband visited her office to attend a birthday party for a co-worker and introduce their newborn baby to her fellow employees. During the birthday party, Tran asked her to meet him in his office where he demanded that she provide a firm return date. She again requested an extension of her leave until December to "recover from my pregnancy and bond with my baby." He denied the request but ultimately agreed to a shorter extension to November 16, 1998. Personnel records indicate that after this meeting, Tran transferred Liu from pregnancy leave status to a personal leave of absence.

Around the beginning of October, Liu decided to travel to China to provide needed care for her terminally ill father and to continue caring for and bonding with her newborn. She telephoned Tran again to ask for an extension until December. He refused. She contacted him again several times, asking for shorter extensions.[2] He refused. Liu then contacted the Human Resources Department and explained her

---

**2.** Though Tran and Liu dispute the number of times he denied extensions, he admits he denied to extend her leave at least once.

situation. She was told that a member of the department would speak to Tran. A few days later, Tran called Liu to give her a one-week extension until November 23, 1998.

Around the end of September or the beginning of October, Tran was informed that the company would be experiencing a reduction-in-force and that Liu's department would be merging with another. He was told that at least one position in the department would be eliminated. Tran and two other employees were the central decision makers as to who would be eliminated.

In mid-October, shortly before Liu had planned to leave for China, Tran requested that she visit the company to review her annual performance evaluation. At the meeting, Tran informed Liu that he was reassigning her primary project to another employee. He further mentioned that the company was downsizing. He then gave Liu her performance evaluation. Her overall score was a 2.52, a 19% drop from the over-all score she had received six months earlier.

Liu's score placed her at the bottom of her department. Tran gave her the lowest possible score, a "one," in several categories including written communication, a category in which she had excelled in her previous evaluation. He also gave her a "one" in several "soft skills" such as "encourages self-development" and "holds people accountable for meeting goals."[3] During the entire year of 1998, Tran did not give a "one" to a single employee other than Liu.

Liu's prior evaluation under her former supervisor, David Groh, was very positive. He gave her very high scores, a 3.1 overall, and remarked that she was an excellent scientist with very good written communication skills. Scores in her department ranged from 2.8 to 3.1, making Liu's score one of the two highest in a department of four. Groh testified that he could not recall ever criticizing her work either to her directly or to any other supervisor.

Around the third week of October, a decision to terminate Liu was made. Robin Dykehouse had primary responsibility of deciding which employee would be terminated. In doing so, she relied on the overall score and verbal recommendations given by division supervisors. According to Dykehouse, Tran characterized Liu as the weakest in his group and recommended her for termination.

On October 17, 1998, Liu left for China. Upon her return on November 18, 1998, Tran told her she had been terminated. Liu was the only scientist involuntarily terminated from her division. The only other scientist whose position was eliminated in the downsizing was reassigned instead of eliminated.

Liu brought this action in the District Court for the Southern District of California in April 2000. The case was transferred to the Central District of California (Eastern Division) on Amway's motion. Liu filed a Second Amended Complaint in September 2000. Amway moved for summary judgment on every cause of action. The court heard argument in September 2001. On October 1, 2001, the district court granted summary judgment in favor of Amway on all claims. Liu appeals.

## II. DISCUSSION

We review a grant of summary judgment *de novo*. *Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir.2000).

---

**3.** Tran explained in his deposition that "soft skills" are skills that "cannot be taught." They apparently require just "being upbeat" and understanding "what motivates team members." Because Liu's English skills were lacking and she was "a little shy," she did not possess these skills according to Tran.

We are governed by the same standard used by the trial court. *Parker v. United States,* 110 F.3d 678, 681 (9th Cir.1997). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether "there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir.2000) (en banc).

## A. FAMILY AND MEDICAL LEAVE ACT AND THE CALIFORNIA FAMILY RIGHTS ACT

The parties do not dispute that Liu was entitled to unpaid leave under the FMLA and its state counterpart, CFRA, after her pregnancy disability leave expired.[4] Liu was entitled to a maximum of four months of pregnancy disability leave under FEHA. Cal. Gov't Code § 12945. She was then entitled to an additional 12 weeks of leave to care for her baby or herself or a close relative with a serious illness under the FMLA, 29 U.S.C. § 2612(a), and CFRA, Cal. Gov't Code § 12945.2(a). Pregnancy disability leave under FEHA is a distinct and additional entitlement to that granted by FMLA and CFRA. Cal.Code Regs. tit. 2, § 7297.6(a) (2003).

We must decide whether there is a triable issue of fact as to whether Liu's protected rights to take FMLA leave were violated by Amway. We find that a triable issue of fact exists and reverse the district court's grant of summary judgment on Liu's FMLA/CFRA claims.

The FMLA provides job security and leave entitlements for employees who need to take absences from work for personal medical reasons, to care for their newborn babies, or to care for family members with serious illnesses. 29 U.S.C. § 2612. The FMLA entitles qualifying employees to take unpaid leave for up to 12 weeks each year provided they have worked for the covered employer for 12 months.[5] 29 U.S.C. § 2612(a).

■■■ The FMLA creates two interrelated substantive rights for employees. *Bachelder v. America West Airlines, Inc.,* 259 F.3d 1112, 1122 (9th Cir.2001). First, an employee has the right to take up to twelve weeks of leave for the reasons described above. 29 U.S.C. § 2612(a). Second, an employee who takes FMLA leave has the right to be restored to his or her original position or to a position equivalent in benefits, pay, and conditions of employment upon return from leave. 29 U.S.C. § 2614(a). The FMLA does not entitle the employee to any rights, benefits, or positions they would not have been entitled to had they not taken leave. 29 U.S.C. § 2614(a)(3)(B). It simply guarantees that an employee's taking leave will not result in a loss of job security or in other adverse employment actions.

To protect the employee, FMLA prohibits interference with the exercise of the employee's right to take leave. 29 U.S.C. § 2615(a). The relevant provision reads "[i]t shall be unlawful for any employer to

**4.** Since CFRA adopts the language of the FMLA and California state courts have held that the same standards apply, we refer to FMLA leave only for the remainder of this opinion with the understanding that CFRA leave is also included. *See Dudley v. Dep't of Transp.,* 90 Cal.App.4th 255, 261, 108 Cal. Rptr.2d 739 (2001); *Pang v. Beverly Hospital, Inc.,* 79 Cal.App.4th 986, 993, 94 Cal.Rptr.2d 643 (2000); *cf. Moreau v. Air France,* 2002 WL 500779, *1 (N.D.Cal. Mar.25, 2002) (dis-

cussing only FMLA because CFRA and FMLA are "substantively identical"), *aff'd,* 343 F.3d 1179 (9th Cir.2003).

**5.** The FMLA sets out certain requirements for the period an employee must have worked to qualify for leave. 29 U.S.C. § 2611. These requirements are not at issue here. The opposing parties both agree Liu was entitled to FMLA leave.

interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title [and subchapter]." 29 U.S.C. § 2615(a)(1).

■ Congress has authorized the Department of Labor ("DOL") to issue implementing regulations for the FMLA. 29 U.S.C. § 2654. These regulations are entitled to deference under *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Bachelder*, 259 F.3d at 1123 n. 9. DOL regulations state that "[t]he FMLA prohibits interference with an employee's rights under the law." 29 C.F.R. § 825.220(a). Any violation of the FMLA itself or of the DOL regulations constitute interference with an employee's rights under the FMLA. 29 C.F.R. § 825.220(b). The DOL interprets "interference" to include "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." *Id.* The regulations specify one form of employer interference—i.e., "employers cannot use the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c).

Liu argues that Amway interfered with, discouraged and denied her FMLA rights, as prohibited by 29 U.S.C. § 2615(a)(1), by (1) denying and mischaracterizing her FMLA leave [6] and (2) using her protected FMLA leave as a factor in its decision to terminate her.[7]

### 1. Denial and Discouragement of Leave

Liu argues that Amway denied her right to FMLA leave (a) by rejecting her requests for additional leave and by forcing her to take shorter extensions of additional

---

[6]. The district court reasoned that this interference claim was irrelevant because there are no actual damages attached to it. The FMLA only provides for compensatory damages and not punitive damages. 29 U.S.C. § 2617(a). Thus, the district court concluded, because Liu was terminated prior to the expiration of her reduced amount of leave, she did not sustain any damages from being denied leave or having her leave mischaracterized as personal leave.

Though we need not reach the question of damages at this stage, we note only that liability as to this portion of the claim may result in damages. The FMLA provides for damages equal to the amount of wages, salary and employment benefits. 29 U.S.C. § 2617(a)(1)(A). Depending on Amway's policies, because Liu's leave was characterized as personal leave, she may have lost employment benefits to which she was entitled. *See generally Pallas v. Pacific Bell*, 940 F.2d 1324, 1326–27 (9th Cir.1991) (finding that employer who credits temporary disability leave toward retirement benefits must also credit pregnancy related leave but need not credit personal leave), *cert. denied*, 502 U.S. 1050, 112 S.Ct. 916, 116 L.Ed.2d 815 (1992).

Further, the repeated interference with and mischaracterization of her FMLA leave will likely be relevant when determining liquidated damages should Liu prevail on her claim. *See generally Bachelder*, 259 F.3d at 1130 (explaining that an employer may be liable for liquidated damages, "unless it can prove that it undertook in good faith the conduct that violated the Act and that it had reasonable grounds for believing that [its action] was not a violation of the Act" (internal quotations omitted)). Liu's repeated leave requests and involvement of the Human Resources Department weigh against arguments of good faith by Amway.

[7]. We note that some circuits have invoked § 2615(a)(2) in cases similar to Liu's where the plaintiff was subjected to an adverse employment action for taking FMLA protected leave. In this circuit, however, we have clearly determined that § 2615(a)(2) applies only to employees who *oppose* employer practices made unlawful by FMLA, whereas, § 2615(a)(1) applies to employees who simply take FMLA leave and as a consequence are subjected to unlawful actions by the employer. *Bachelder*, 259 F.3d at 1124. For examples of the application of § 2615(a)(2) to this type of claim, see *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1352 (11th Cir.2000), and *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159–60 (1st Cir.1998).

leave and (b) by mischaracterizing her FMLA protected leave as personal leave.[8]

### (a) Denial of Extensions

■ Liu claims that by repeatedly denying her requests for extensions and requiring her to reduce her leave time, Amway interfered with her rights under FMLA.

Amway argues that regardless of whether Tran actually granted her extensions, Liu in fact received the entire amount of leave she requested because she was still on leave when she was terminated. The district court found this argument persuasive and held that it was irrelevant that Tran denied Liu leave on several occasions.

As the Supreme Court recently recognized, the FMLA was enacted to respond to the " 'serious problem with the discretionary nature of family leave' " that occurs "when 'the authority to grant leave and to arrange the length of that leave rests with individual supervisors.' " *Nevada Dep't of Human Resources v. Hibbs,* 538 U.S. 721, ——, 123 S.Ct. 1972, 1980, 155 L.Ed.2d 953 (2003) (quoting H.R.Rep. No. 103–8, pt. 2, pp. 10–11 (1993)).

■ DOL regulations clearly state that an employer interferes with an employee's rights under FMLA by "refusing to authorize FMLA leave" and "discouraging an employee from using such leave." 29 C.F.R. § 825.220. It follows that an employer has discouraged an employee from taking FMLA leave when his or her supervisor interferes with the length and dates of leave, including denying leave out right. *See, e.g., Williams v. Shenango, Inc.,* 986 F.Supp. 309, 320–21 (W.D.Pa. 1997) (holding that periodic denials of FMLA leave requests and limitations on which week the employee was allowed to take it presented a genuine issue of fact as to whether the employee's rights under FMLA were denied). The statute and the accompanying regulations protect an employee from *any* employer actions that discourage or interfere with the right to take FMLA leave. 29 C.F.R. § 825.220(1).

The evidence before the court on summary judgment demonstrates clear interference with Liu's rights to take FMLA leave. Tran admits that he believed that he had discretion on the matter and so refused to grant her extensions repeatedly—extensions she was entitled to under FMLA. Tran pressured Liu to reduce her leave time, thus discouraging her from using her FMLA leave.

We reverse the district court's grant of summary judgment on this portion of Liu's interference claim. There is a triable issue of material fact as to whether Amway interfered with Liu's rights by denying and discouraging her use of FMLA leave.

### (b) Mischaracterization of FMLA Leave

■ It is the employer's responsibility to determine when FMLA leave is appropriate, to inquire as to specific facts to make that determination, and to inform the employee of his or her entitlements. *Bailey v. Southwest Gas Co.,* 275 F.3d 1181, 1185 (9th Cir.2002). DOL regulations state that "[t]he employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." 29 C.F.R. § 825.302(c).

In the case at hand, Liu duly informed Tran of the reasons for her leave. It was his duty to initiate a procedure to determine whether she qualified for FMLA

---

8. Amway mistakenly claims that Liu failed to raise an "interference" claim under FMLA in her Second Amended Complaint. Liu simply misidentifies her interference claim as "retaliation" and "discrimination" claim under the FMLA.

leave. Liu even contacted Amway's Human Resources Department directly to explain her situation. The department took no action to determine whether Liu was entitled to FMLA leave.

An employer's good faith or lack of knowledge that its conduct violates FMLA does not protect it from liability. *Bachelder*, 259 F.3d at 1130. Amway was responsible for properly identifying Liu's FMLA leave. Both Tran and the Human Resources Department failed to fulfill their duties to Liu as required by the FMLA.

Although Amway concedes that Liu's FMLA qualifying leave was misidentified as personal leave, it argues that Liu was not ultimately denied rights under FMLA because there was no practical distinction between the personal leave she was granted and the FMLA leave to which she was entitled. The district court agreed, holding that the classification of Liu's leave was irrelevant.

The district court erred. Under DOL regulations, the mischaracterization of Liu's FMLA leave as personal leave qualifies as "interference" with her leave. A violation of the FMLA simply requires that the employer deny the employee's entitlement to FMLA leave. 29 C.F.R. § 825.220(a)(1) & (b).[9] The employer here failed in its responsibility to assess Liu's entitlement to FMLA leave and therefore denied her a substantive right under FMLA. Denial of Liu's right to FMLA leave constitutes a violation of the FMLA.

Further, the designation of Liu's leave as personal leave deprived her of rights under FMLA. By designating Liu's leave as "personal," she was subject to the control and discretion of her supervisor in taking leave she had a statutory right to take. Tran clearly believed that it was within his discretion to deny leave because the leave was "personal." Had Liu's leave been appropriately designated FMLA leave, Tran would not have had such discretion. *See generally Hibbs*, 538 U.S. at ——, 123 S.Ct. at 1980 (discussing one of the aims of FMLA as eliminating the discretion individual supervisors had in granting family leave). FMLA leave for baby bonding time is not contingent upon an employer's needs. *E.g.*, *Blohm v. Dillard's Inc.*, 95 F.Supp.2d 473, 478–79 (E.D.N.C.2000) (rejecting an argument by employer that the employee should have scheduled their FMLA leave around the needs of the corporation).

We conclude that Liu presented a triable issue of fact as to whether her rights under FMLA were violated by the misidentification of her FMLA leave as personal leave. FMLA enforcement mechanisms protect employees against having to plead and negotiate with their supervisors to be granted leave they are *entitled* to receive under both FMLA and CFRA. We reverse the district court on this issue.

### 2. Use of FMLA Leave as a Factor in Liu's Termination

Liu also alleges that Amway impermissibly used her FMLA leave as a factor in the decision to terminate her. Where an employee alleges that his or her FMLA leave is impermissibly considered in the decision to terminate him or her, this Circuit applies the standard set forth by the DOL in 29 CFR § 825.220(c). *Bachelder*, 259 F.3d at 1124–25. Thus, at trial, an employee may prevail on a claim

---

9. Section 825.220(a)(1) reads "[a]n employer is prohibited from interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the Act." 29 C.F.R. § 825.220(a)(1). Section 825.220(b) reads "[a]ny violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act." 29 C.F.R. § 825.220(b).

that an employer interfered with her rights by terminating her in violation of FMLA by showing,

> by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her. She can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both.

*Id.* at 1125. Therefore, the question for us on appeal from the district court's grant of summary judgment is whether there is a triable issue of material fact as to whether the FMLA leave taken by Liu was impermissibly considered as a factor in her termination.

■ Here, the district court erred by applying the analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to Liu's claim that her FMLA qualified leave influenced the decision to terminate her. While other circuits have applied the *McDonnell Douglas* framework to FMLA termination cases, this Circuit, almost two months before the district court's ruling in this case, explicitly declined to apply this framework. *Bachelder*, 259 F.3d at 1125. We held that the statutory and regulatory language of FMLA makes clear that where an employee is subjected to "negative consequences ... simply because he has used FMLA leave," the employer has interfered with the employee's FMLA rights under

29 C.F.R. § 825.220(a)(1). *Bachelder*, 259 F.3d at 1124:

> In contrast, where an employee is punished for *opposing* unlawful practices by the employer, the issue then becomes one of discrimination and retaliation. *Id.*[10] In a similar determination made by the Seventh Circuit in *Diaz v. Fort Wayne Corp.*, 131 F.3d 711 (7th Cir.1997), the court explained that FMLA claims "do not depend on discrimination" since the issue is not that "the employer treated one employee worse than another" but that every employee has substantive rights under FMLA that the employer must respect. *Id.* at 712.

■ We apply the correct standard and find that Liu has presented evidence from which a jury could conclude that Tran took the fact that she took leave into account in giving her a low score on her evaluation and recommending her for termination.[11]

■ Liu's evidence that Tran's subjective evaluation served as the central, if not sole, factor in her termination is significant.[12] Where termination decisions rely on subjective evaluations, careful analysis of possible impermissible motivations is warranted because such evaluations are particularly "susceptible of abuse and more likely to mask pretext." *Weldon v. Kraft, Inc.*, 896 F.2d 793, 798 (3d Cir.1990)

---

**10.** This court has reserved judgment on whether the *McDonnell Douglas* analysis would be applicable in an anti-retaliation action under § 2615(a)(2). *Bachelder*, 259 F.3d at 1125.

**11.** Amway argues that because Liu was terminated in the context of a legitimate reduction in force, there can be no liability under FMLA. This is incorrect. Termination within the context of a reduction in force does not insulate the defendant from liability for violating FMLA. Where a plaintiff alleges that she was terminated for unlawful reasons, courts

will not accept a reduction in force as the conclusory explanation for the employee's termination. *See Hodgens*, 144 F.3d at 167–68 (holding that where an employee takes FMLA leave and is terminated in a reduction in force, legitimate selection criteria presented by the employer will not insulate it from liability).

**12.** Depositions of the other two employees on the termination task force reveal that the central determinant as to which employees would be eliminated from each division was the current evaluation performed by their supervisor.

(internal citation omitted); *see also Lujan v. Walters,* 813 F.2d 1051, 1057 (10th Cir. 1987) (noting that "subjective criteria as 'dedicated' and 'enthusiasm' may offer a convenient pretext for giving force and effect to prejudice, and can create a strong inference of employment discrimination"). Here, Liu's lowest scores were, as Tran explained, in "soft skills" that "cannot be taught," such as "being upbeat." A jury could find these categories vague enough to be suspect given the surrounding events.

The 19% drop in overall score from her former employee evaluation may also create an inference of impermissible motivation. *See Winarto v. Toshiba Am. Elecs. Components, Inc.,* 274 F.3d 1276, 1286 (9th Cir.2001) (holding that "[a]n unwarranted reduction in performance review scores can constitute evidence of pretext in retaliation cases" under Title VII), *cert. dismissed,* 537 U.S. 1098, 123 S.Ct. 816, 154 L.Ed.2d 766 (2003); *cf. Hodgens,* 144 F.3d at 170–171 (holding that prior bad performance over two year span in evaluations weakened support for allegation that the employee's termination was in violation of FMLA).

This evidence, combined with Tran's behavior toward Liu regarding her leave suggests that the evaluation may have been tainted with his attitude towards her leave. His repeated denials of her leave and comments about his increased workload support this contention. Finally, the proximity in time between the leave and her termination also provides supporting evidence of a connection between the two events. *Hodgens,* 144 F.3d at 168 (holding that the "close temporal proximity between two events may give rise to an inference of causal connection.").

We thus conclude there is a triable issue of material fact on whether Amway considered Liu's FMLA qualified leave as a factor in her termination, thus causing interference with her rights under FMLA.

## B. PUBLIC POLICY

▆▆▆▆ Under California law, employment is at-will unless the parties contract otherwise. *See* Cal. Lab.Code § 2922. California courts, however, have carved out a specific exception to this general rule: an employer will be liable if it terminates an employee in violation of public policy. *See Stevenson v. Superior Court,* 16 Cal.4th 880, 66 Cal.Rptr.2d 888, 941 P.2d 1157 (1997).

▆▆▆▆ *Stevenson* established a set of requirements that a policy must satisfy to support a tortious discharge claim.

> First, the policy must be supported by either constitutional or statutory provisions. Second, the policy must be "public" in the sense that it "inures to the benefit of the public" rather than serving merely the interests of the individual. Third, the policy must have been articulated at the time of the discharge. Fourth, the policy must be "fundamental" and "substantial."

*Id.* at 889–90, 66 Cal.Rptr.2d 888, 941 P.2d 1157; *see also Gantt v. Sentry Insurance,* 1 Cal.4th 1083, 1095, 4 Cal.Rptr.2d 874, 824 P.2d 680 (1992), *overruled on other grounds by Green v. Ralee Eng'g Co.,* 19 Cal.4th 66, 90, 78 Cal.Rptr.2d 16, 960 P.2d 1046 (1998).[13]

▆▆▆▆ Discharge in violation of the CFRA has been held, as a matter of law, to constitute wrongful discharge in violation of public policy. *See Nelson v. United Technologies,* 74 Cal.App.4th 597, 612, 88

---

13. *Green* expanded the first *Stevenson* requirement—that the policy be supported by either constitutional or statutory provisions—to include statutorily authorized administrative regulations. 19 Cal.4th at 80 n. 6, 78 Cal. Rptr.2d 16, 960 P.2d 1046.

Cal.Rptr.2d 239 (1999); *see also Moreau,* 2002 WL 500779, at *8. As its federal counterpart, violation of the FMLA also must constitute a violation of public policy.

Thus, because there is a triable issue of material fact as to whether Liu was terminated in violation of the FMLA and CFRA, summary judgment must also be denied on the question of whether her termination violated public policy.

### C. BREACH OF IMPLIED–IN–FACT CONTRACT AND COVENANT OF GOOD FAITH AND FAIR DEALING

■ Liu argues that Amway breached an implied-in-fact contract that she would only be terminated for cause. She alleges Amway failed to follow its disciplinary and termination procedures as set forth in its employee handbook.

■ California law presumes at-will employment where contract terms do not specify otherwise. *Guz v. Bechtel Nat'l, Inc.,* 24 Cal.4th 317, 335, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000) (analyzing Cal. Lab.Code § 2922). While California courts will look to factors such as employer personnel policies, longevity of service, and assurances of continued employment in determining whether the employer's conduct "gave rise to an implied-in-fact contract," they have been careful not to interpret such factors too liberally. *Id.* at 337, 341–42, 100 Cal.Rptr.2d 352, 8 P.3d 1089. Further, explicit at-will contract language "must be taken into account, along with all other pertinent evidence, in ascertaining the terms on which a worker was employed." *Id.* at 340, 100 Cal.Rptr.2d 352, 8 P.3d 1089.

Liu's short term of employment with Amway and explicit at-will provisions contained in her employment letter and employee handbook suggest that no implied-in-fact contract was created that limited Amway's ability to terminate employment at any time.

Further, even if Liu could demonstrate that Amway was required to terminate her for good cause, California courts have held that a valid reduction in force constitutes "good cause." *See, e.g., Clutterham v. Coachmen Indus., Inc.,* 169 Cal.App.3d 1223, 1226, 215 Cal.Rptr. 795 (1985). There is no evidence in the record to suggest that Amway's reduction in force was invalid.

■ Finally, Liu's covenant of good faith and fair dealing claim also fails, because there are no contract terms to support the covenant. *See Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 690, 254 Cal.Rptr. 211, 765 P.2d 373 (1988).

Consequently, we affirm the district court's grant of summary judgment on Liu's breach of implied in fact contract and covenant of good faith and fair dealing claims.

RYMER, Circuit Judge, with whom McKEOWN, Circuit Judge, joins.

### D. TITLE VII AND FEHA RETALIATION AND DISCRIMINATION

■ Liu abandoned whatever claims she may have had under Title VII and FEHA by failing to raise them as issues or make any argument with respect to them in her opening brief. *See Collins v. City of San Diego,* 841 F.2d 337, 339 (9th Cir. 1988). Accordingly, the district court's judgment stands as to Liu's Title VII and FEHA claims.

### III. CONCLUSION

We REVERSE the district court's grant of summary judgment on Liu's FMLA, CFRA, and public policy claims and AFFIRM the district court's decision as to Liu's breach of contract and covenant of good faith and fair dealing claims, and

Title VII and FEHA retaliation and discrimination claims.

AFFIRMED in part, REVERSED in part, and REMANDED.

PREGERSON, Circuit Judge, dissenting in part.

I dissent from the majority's opinion on Liu's Title VII and FEHA retaliation and discrimination claims because, as I read the record and briefs in this case, there is no doubt that Liu appealed the district court's ruling dismissing those claims. Because I believe that the ruling was incorrect, I would reverse the district court's order dismissing Liu's Title VII and FEHA claims. The district court granted summary judgment for Amway on *all* of Liu's claims and analyzed them together. By noticing the appeal of the entire district court's order, Liu's notice of appeal preserved her Title VII and FEHA claims. Her opening brief contrasts the standard of review for her Title VII and FEHA claims to the applicable standard for her other claims and, though not citing Title VII's and FEHA's statutory provisions, analyzes her claims under Title VII and FEHA on pages 36–48. She argues that Amway violated Title VII and FEHA by discriminating against her on the basis of sex and pregnancy and by retaliating against her when she complained about Tran's refusal to grant her leave.[1] I would reverse the district court's grant of summary judgment on those claims.[2]

## 1. Discrimination

Title VII makes it an "unlawful employment practice" for an employer to discriminate against an employee "because of" sex, race or any other protected characteristic. 42 U.S.C. § 2000e–2(a)(1). The Pregnancy Discrimination Act, a 1978 amendment to Title VII, states explicitly that sex discrimination includes discrimination against individuals "because of pregnancy" or who are "affected by pregnancy" and child-birth. 42 U.S.C. § 2000e(k).

Because sex discrimination includes discrimination based on pregnancy, adverse employment actions that occur as a result of the employee taking FMLA protected leave fall squarely inside the bounds of Title VII prohibitions. Sex discrimination that occurs by denying or discouraging leave is central to the remedial aim of the FMLA. *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, ——, 123 S.Ct. 1972, 1978, 155 L.Ed.2d 953 (2003) ("The FMLA aims to protect the right to be free from gender-based discrimination in the work place."). In enacting the FMLA, Congress recognized that the lack of uniformity concerning leave policies resulted in "an environment where[sex] discrimination is rampant." *Id.* at 1980 (quoting 1987 Senate Labor Hearings, pt. 2, at 170 (testimony of Peggy Montes, Mayor's Commission on Women's Affairs, City of Chicago)).

Liu's allegation that Amway intentionally discriminated against her should be treated as a disparate treatment claim un-

---

1. Sex discrimination claims under Title VII and FEHA are decided under the same standard. *See Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir.2000) (explaining that when a plaintiff alleges sex discrimination under Title VII and the FEHA, we need only assess her claim under federal law because Title VII and FEHA operate under the same guiding principles).

2. The district court erred by failing to distinguish between Liu's retaliation and discrimination claims. Even where both claims are analyzed under the *McDonnell Douglas* burden shifting test, each is subject to different requirements to make out a prima facie case and different evidence necessary to rebut pretext. *Bergene v. Salt River Project Agric. Improvement and Power Dist.*, 272 F.3d 1136, 1140 (9th Cir.2001).

der Title VII. *Sischo–Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1109 (9th Cir.1991). Specifically, she alleges that Tran was motivated by discriminatory animus when he gave her a low score on her employee evaluation and recommended her for termination in Amway's reduction in force process.

Though she has not identified them as such,[3] I would treat the allegations in her complaint and the supporting evidence presented in opposition to Amway's motion for summary judgment to make out what we have traditionally labeled a "mixed-motive case." [4]

In *Costa*, we recently clarified that after Title VII was amended in 1991,[5] "the plaintiff in any Title VII case may establish a violation through a preponderance of the evidence (whether direct or circumstantial) that a protected characteristic played a 'motivating factor' " in an adverse employment action.[6] 299 F.3d at 853–54. The employer may then assert an affirmative defense that "limits the remedies if an employer demonstrates that it would have nonetheless made the 'same decision' " absent consideration of the impermissible factor. *Costa*, 299 F.3d at 847–48 (analyzing 42 U.S.C. § 2000e–5(a)(2)(B)). Howev-

---

**3.** The theory on which a plaintiff intends to rely is often not identified at the outset of the case. *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 856 (9th Cir.2002) (en banc) ("As the Supreme Court has observed, a case need not be characterized or labeled at the outset. Rather, the shape will often emerge after discovery or even at trial."), *aff'd*, —— U.S. ——, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003); *Washington v. Garrett*, 10 F.3d 1421, 1432 (9th Cir.1993) (recognizing disparate treatment claim though complaint did not specify a particular theory of discrimination); *Sischo–Nownejad*, 934 F.2d at 1110 n. 8 ("A plaintiff need not choose between a single motive and mixed motive theory at the beginning of the case"). In fact, a plaintiff will rarely identify the theory as early as summary judgment. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 286 n. 12, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) ("Indeed, we expect that plaintiffs often will allege, in the alternative, that their cases are both [mixed and single motive].... At some point in the proceedings, of course, the District Court must decide whether a particular case involves mixed motives.").

**4.** In a mixed motive case, the plaintiff alleges that a discriminatory factor appears to be one of the considerations motivating the adverse employment action. In a single motive case, the plaintiff alleges that it was the only reason for the action. *See Sischo–Nownejad*, 934 F.2d at 1109.

**5.** The relevant provision reads, "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." Civil Rights Act of 1964, Title VII, § 701, 42 U.S.C. § 2000e–2(m) (as amended by Civil Rights Act of 1991, Pub.L. No. 102–166, § 107(a), 105 Stat. 1071 (1991)).

**6.** The Supreme Court appears to have reserved judgment on whether § 2000e–2(m) applies in single motive case. *Desert Palace*, —— U.S. at —— n. 1, 123 S.Ct. at 2151 n. 1 ("[T]his case does not require us to decide when, if ever, § 107 [42 U.S.C. § 2000e–2(m)] applies outside of the mixed motive context."). However, in this circuit, we have concluded that "[f]ollowing the 1991 amendments, characterizing the evidence as mixed-motive instead of single motive results only in the availability of a different defense, a difference which derives directly from the statutory text." *Costa*, 299 F.3d at 856.

The only court to encounter the question of whether § 2000e–2(m) applies to single-motive cases after *Desert Palace* has interpreted § 2000e–2(m) as necessarily applying to single motive cases. *Dare v. Wal–Mart Stores, Inc.*, 267 F.Supp.2d 987, 990–92 (D.Minn. 2003). As the court in *Dare* explained, "evaluating single-motive claims under the *McDonnell Douglas* burden-shifting scheme inevitably and paradoxically leads to a classic mixed-motive scenario.... [T]he process dictated by the Civil Rights Act of 1991 [in § 2000e–2(m) ] is more useful than the analysis required by *McDonnell Douglas*." *Id.* at 991.

er, this defense is only available "with respect to the scope of remedies, not as a defense to liability." *Id.* at 850.

To survive summary judgment, Liu must present a triable issue of fact as to whether sex was a motivating factor in Amway's decision to terminate her.[7] She may do so by presenting either direct or circumstantial evidence, both of which are given equal weight.[8] *Desert Palace,* ——— U.S. at ———, 123 S.Ct. at 2155 ("[D]irect evidence of discrimination is not required in mixed-motive cases. . . ."). Because disparate treatment claims require evidence of intentional discrimination, which often leads to an "elusive" factual inquiry, "the plaintiff need produce very little evidence of discriminatory motive to raise a genuine issue of fact." *Mustafa v. Clark County Sch. Dist.,* 157 F.3d 1169, 1180 (9th Cir. 1998) (quoting *Lindahl v. Air France,* 930 F.2d 1434, 1438 (9th Cir.1991)).

Having reviewed the evidence before the district court, I would conclude that Liu raises a triable issue of material fact on whether her sex was a motivating factor in Amway's decision to terminate her. Tran's behavior and statements could support a finding of discriminatory animus. Tran's repeated denials of Liu's requests for extensions of leave combined with his complaints about his increased workload caused by her leave support her allegations. His callous and inappropriate comment that she should not "die yet, we're holding projects for you" in response to Liu's description of the "dizzy spells" that she experienced bolsters the inference of discrimination created by his behavior. Finally Tran's behavior during the evaluation meeting he held with Liu while she was on leave, which was within one or two weeks before the decision to terminate her, also raises inferences of discrimination. When Tran called Liu to attend the meeting, he told her to go directly to his office. He also told her not to stop anywhere else on the premises because she was "not working at the company" while on leave. At this meeting, Tran presented Liu with the low evaluation scores, informed her that her primary project was being transferred to another employee and

---

7. Because I would conclude that Liu presents a mixed-motive discrimination case, I would also decline to apply the *McDonnell Douglas* burden shifting test, despite the fact that Liu has invoked it. The *McDonnell Douglas* test is useful where the plaintiff alleges that the employer has masked actual discriminatory reasons with pretextual ones. Liu does not argue that the reduction in force was a pretext for her dismissal, but argues that only Tran's discriminatory animus infected the decision making process. *See generally Costa,* 299 F.3d at 855. Accordingly, cases cited by the district court, such as *Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267, 270 (9th Cir. 1996), are inapposite.

8. The Supreme Court recently explained why direct and indirect evidence should be given equal weight. *Desert Palace,* —— U.S. at ——, 123 S.Ct. at 2154 ("The reason for treating circumstantial evidence and direct evidence alike is both clear and deep rooted: 'Circumstantial evidence is not only sufficient, but

may also be more certain, satisfying and persuasive than direct evidence.' " (quoting *Rogers v. Missouri Pac. R.R. Co.,* 352 U.S. 500, 508 n. 17, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957))).

Prior to *Desert Palace,* a mixed motive analysis was not available to a plaintiff that did not present direct evidence of discrimination. In the absence of direct evidence, summary judgment motions were decided using the *McDonnell Douglas* analysis. *Trans World Airlines v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) ("[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination."). However, after *Desert Palace,* no such distinction exists. The assessment of whether *McDonnell Douglas* should be applied is dependent on the particular facts of the case. *See Cordova v. State Farm Ins.,* 124 F.3d 1145, 1148 (9th Cir.1997) (stating that *McDonnell Douglas* test provides "one way" to raise an inference of discrimination).

warned her that there would be a reduction in workforce. This behavior raises an inference of discriminatory animus.

Tran's behavior and comments, however, are only significant because they originate from a person with influence over the termination decision. *Cf. Weston–Smith v. Cooley Dickinson Hosp., Inc.*, 282 F.3d 60, 70 (1st Cir.2002) (finding that complaints by co-workers about plaintiff's "lack of accessibility" caused by her FMLA protected leave did not constitute circumstantial evidence of discrimination because there was no link between the co-workers' complaints and the decision process). Thus, Tran's comments cannot be dismissed as "stray remark[s]." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir.1998) (finding that a comment made by an individual who may have influenced the decision making process was not a stray remark because it was not "uttered in an ambivalent manner" but "tied directly to[the plaintiff]'s termination" (quoting *Nesbit v. Pepsico., Inc.*, 994 F.2d 703, 705 (9th Cir.1993))).

There is a factual dispute as to whether Tran participated directly in the reduction in force process. For the purposes of summary judgment, we need not resolve such inconsistencies. *Godwin*, 150 F.3d at 1221 (finding that disputes as to whether individual was involved in the employment decision was an issue for the trier of fact). Regardless, in her deposition, Robin Dykehouse, the employee in charge of the reduction in force, testified that she relied heavily on Tran's recommendations and evaluations in the decision to terminate Liu. Where a decision maker rests his or her ultimate decision on an opinion or evaluation that is tainted by discrimination, she does not start from a "clean slate." *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir.2001). Thus, an employer may not escape liability simply because the in-

dividual with discriminatory animus was not the final decision maker in the adverse employment action. *Id.* at 1284; *Gagnon v. Sprint Corp.*, 284 F.3d 839, 848 (8th Cir.) ("[C]ourts look beyond the moment a decision was made in order to determine whether statements or comments made by other managerial employees played a role in the ultimate decision making process ...."), *cert. denied*, 537 U.S. 1001, 123 S.Ct. 485, 154 L.Ed.2d 396 and 537 U.S. 1014, 123 S.Ct. 491, 154 L.Ed.2d 420 (2002); *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir.1990) (finding that the committee's decision to fire plaintiff was "tainted" by discriminatory "prejudice" because supervisor "influenced the committee's deliberations by portraying" plaintiff's "performance ... in the worst possible light").

The proximity in time between a plaintiff's protected action and the termination decision also supports an inference of discrimination. *See Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir.2000) ("That an employer's actions were caused by an employee's engagement in protected activities may be inferred from 'proximity in time between the protected action and the allegedly retaliatory employment decision.' " (quoting *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987))). Here, the events occurred simultaneously because Liu was on leave while the termination decision was made.

Tran's evaluation of Liu also provides evidence from which discrimination could be inferred. Liu's overall score in her employee evaluation dropped by 19% from 3.1, under her former supervisor, to 2.52, under Tran. *See Winarto*, 274 F.3d at 1284 (finding that "an unwarranted reduction in performance review scores" served as evidence of retaliatory motive). The relative harshness with which Tran evaluated Liu is also relevant. For example, Tran gave

Liu a "one," the lowest possible score, in several categories on her evaluation, including "encourages self-development" and "holds people accountable for meeting goals." Tran did not give a "one" to any other employee evaluated that year.

A jury could also infer discriminatory animus from particular inconsistencies between Tran's evaluation and Liu's previous evaluation by her former supervisor. For example, Tran gave Liu a "one" in "written communication," a category in which she had only six months earlier received praise. *E.g., Godwin*, 150 F.3d at 1222 (taking into account evidence that plaintiff had received recommendations indicating that she got along well with people but decision makers had cited inability to get along with people as a reason for denying her a promotion.).

Having examined the overall evidence in the record, I would conclude that it raises genuine issues of material fact as to whether sex discrimination played a motivating factor in the decision to terminate Liu. Whether Amway may have made the same decision to terminate Liu without Tran's discriminatory influence over the decision, is an issue to be dealt with in determining the scope of damages if Amway raises a "same decision" affirmative

defense. I would, therefore, conclude that summary judgment should not have been granted on Liu's discrimination claim.

## 2. Retaliation

In her complaint, Liu alleges that Amway also retaliated against her for complaining to its Human Resources Department about Tran's refusal to extend her leave. For purposes of summary judgment, we analyze Liu's Title VII and FEHA retaliation claim under the *McDonnell Douglas* burden shifting standard. *Winarto*, 274 F.3d at 1283–84; *Brooks*, 229 F.3d at 928. The three step burden shifting test requires the plaintiff to raise an inference of retaliation by presenting evidence sufficient to support a prima facie case of retaliation. The burden then shifts to the employer who must present evidence of a legitimate, non-retaliatory reason for the employee's dismissal. Once this is done the initial presumption is considered rebutted and the burden then shifts back to the plaintiff to show that the defendant's so-called non-retaliatory reasons were pre-textual. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Bergene*, 272 F.3d at 1140–41.[9] To state a

---

**9.** The relevant Title VII retaliation provision provides that it is an

unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. §§ 2000e–3(a).

The *California Fair Employment and Housing Act* makes it

an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:

. . . .

(h) For any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.

Cal. Gov.Code § 12940.

prima facie case of retaliation, a plaintiff must show that:

> (1) she was engaging in a protected activity, (2) the employer subjected her to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action.

*Bergene,* 272 F.3d at 1140.

I agree with the district court that Liu clearly established a prima facie case of retaliation. Liu engaged in protected activity by complaining to the Human Resources Department. *See Winarto,* 274 F.3d at 1285 (finding that an employee complaint to the Human Resources Department was a protected activity under Title VII). The causal connection is established by Tran's influence over the termination process and the temporal proximity of the protected activity and the adverse action. *See Ray,* 217 F.3d at 1244. Evidence suggests that the decision to terminate Liu was made a few weeks after her complaint to the Human Resources Department. *See Yartzoff,* 809 F.2d at 1376 (causation established where adverse actions occurred less than three months after complaint was filed). Evidence that Tran granted her a shorter extension after she complained to the Human Resources Department suggests that Tran knew of Liu's complaint. *See Raad v. Fairbanks N. Star Borough Sch. Dist.,* 323 F.3d 1185, 1197 (9th Cir.2003) ("[T]he plaintiff must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity.").

In turn, Amway offers a non-retaliatory reason for her termination. Amway argues that Liu was terminated because she had the lowest evaluation score and was the lowest performer in her department. The burden then shifts back to Liu to demonstrate that Amway's reasons are pretextual because they hide retaliatory motives. *Bergene,* 272 F.3d at 1141.

As in Liu's Title VII sex discrimination claim, Tran's comments and behavior towards her serve to rebut his pretextual justifications. Particularly relevant is Tran's aggressive comment that Liu proceed directly to his office for her evaluation meeting because while she was on leave, she was "not working at the company." Liu describes the meeting as tense and uncomfortable. This evaluation meeting occurred less than two weeks after her complaint to the Human Resources Department.

Lowered evaluation scores also serve as evidence of retaliatory motives to rebut pretext. The 19% drop in Liu's score is evidence of possible retaliation. *See Winarto,* 274 F.3d at 1286–87 (finding that a 17.8% drop in evaluation score served as evidence of retaliation).

I would conclude that the evidence in the record raises genuine issues of material fact as to whether Amway violated Title VII and FEHA by retaliating against Liu for engaging in a protected activity. I would reverse the district court's grant of summary judgment against Liu on her retaliation claim.

Accordingly, I respectfully dissent from Part IID of the court's opinion.

RYMER, Circuit Judge, concurring in part and dissenting in part.

I see the FMLA claim differently from the majority opinion, although I concur in the disposition of claims for breach of an implied-in-fact contract and the covenant of good faith and fair dealing.

Liu never argued in the district court that "mischaracterizing" her leave as personal leave rather than FMLA leave constituted "interference" with her rights to FMLA leave. In any event, Amway

granted Liu's requests for leave, albeit for less time than she wanted. How her leave was *labeled* could not have made any difference in this case, because she was on *authorized leave* when she was terminated (November 18, 1998) as a part of a reduction in force. Liu does not dispute the bona fides of the reduction in force. Thus, as the district court saw it (and so do I), Amway could still have terminated Liu even if she had been on leave designated as FMLA leave and regardless of whether she had been on leave through December.

For the same reason, I disagree that reversal is required even if the district court should not have treated Liu's remaining claims as interrelated discrimination claims based on retaliation—and so subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)—but should instead have considered whether Amway used the taking of (FMLA) leave as a "negative factor" in its decision to terminate Liu under the analysis prescribed by *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112 (9th Cir.2001). Liu does not have a substantive right to be compensated or reinstated if she would not otherwise have been employed because her position was eliminated in a reduction in force. But at a minimum, because the parties did not argue the applicability of *Bachelder* before the district court, nor did they litigate this case on summary judgment using the *Bachelder* standard, and because they offer no insight on appeal as to how *Bachelder* plays out on the record adduced, I would remand for the parties and the district court to revisit the issue in light of the standard that we now hold is correct.